## WILLIAM PENN SCHOOL DISTRICT, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (WESTERMAN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1998.

Decided Aug. 19, 1998.

David W. Brown, Huntingdon Valley, for petitioner.

Gary I. Spivack, Philadelphia, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

William Penn School District (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) granting the claim petition filed by Kathleen Westerman (Claimant). We affirm in part and reverse in part.

Claimant was employed as an instructional assistant at the Colwyn Elementary School from September of 1990 to April 1, 1993. Claimant worked primarily in the basement of the school, for approximately thirty-five to forty hours per week. On February 8, 1994, Claimant filed a claim petition alleging that she was totally disabled as a result of pulmonary problems caused by exposure to fungus and bacteria in the workplace. Employer filed a timely answer denying these allegations and the case was assigned to a WCJ.

Claimant described the basement classroom as damp, having a foul odor, and having a white, powder-like substance growing on the walls near her desk. Claimant testified that at the end of each day she had a foul taste in her mouth and felt like she had a cold. Claimant stated that she and other staff members complained about these conditions to the principal, but no action was taken.

Claimant introduced the results and recommendations of two environmental studies performed in May and July of 1993. The studies found that the basement area had unacceptable fungal contamination, elevated levels of bacteria and insufficient ventilation. Claimant testified that the basement was sealed off and all of its contents were destroyed after the test results were received. Judith Cook, a teacher whom Claimant assisted, confirmed Claimant's description of the classroom.

Claimant testified that she had never been diagnosed with allergies, or any type of respiratory problem prior to July of 1992. She stated that, by the end of the 1991–92 school year, she was having difficulty breathing. On July 30, 1992, Claimant was hospitalized for a week, suffering from a cough, chest pain, and breathing difficulty. By September of 1995, Claimant had been hospitalized approximately twenty times; she has been treated with a number of medications and, on some occasions, she has been placed on a respirator.

Claimant testified that she continues to go to the hospital every three to four weeks, as needed, for treatment of her breathing problems. Claimant stated she continues to take a number of medications and uses a nebulizer machine.

Claimant also testified that she has a number of unpaid medical bills and that other bills were paid by Blue Cross/Blue Shield. However, Claimant did not submit any medical bills into evidence during the course of the hearings. Instead, after the record was closed, Claimant submitted a typed schedule of unpaid medical bills and copies of Blue Cross/Blue Shield statements with her brief to the WCJ.

Claimant presented the deposition testimony of Eddy A. Bresnitz, M.D., who is board certified in pulmonary medicine and preventive medicine. Dr. Bresnitz testified that his examination of Claimant on January 31, 1995 revealed poor air entry bilaterally, shallow breathing, notable wheezing, and obesity related to steroid use. Dr. Bresnitz reviewed Claimant's medical records, x-rays, pulmo-

nary function studies, as well as the environmental reports detailing conditions of the school. Dr. Bresnitz opined that Claimant has severe asthma caused by exposure to the fungal elements and poor environmental conditions at the school. He stated that the environmental conditions at the school were a substantial contributing factor to the development and exacerbation of Claimant's respiratory problems, and he explained that once Claimant's asthma was "set off," she became sensitive to things like cat hair, dust, and ragweed. Dr. Bresnitz testified that Claimant is completely disabled from returning to her employment due to a severe impairment of her lung function.

Employer presented the deposition testimony of Gerard J. Criner, M.D., who is board certified in internal medicine, pulmonary medicine, and critical care medicine. Dr. Criner testified that he examined Claimant on August 8, 1994, and conducted an extensive review of Claimant's medical records. Dr. Criner emphasized that the environmental reports had found aspergillus in the work-environment and that exposure to this substance often caused the condition of allergic bronchopulmonary aspergillosis. Dr. Criner found no evidence that Claimant had aspergillosis in her body, or any other symptoms of that condition. He concluded that Claimant had a vocal cord dysfunction that could be related to paradoxal or factitious asthma. Dr. Criner opined that if Claimant had sustained a work-related injury, she had fully recovered from it as of the date of his examination. He further opined that Claimant could return to her pre-injury job, but for non-work-related factors.

The WCJ accepted the testimony of Claimant and Ms. Cook as credible, and he found the testimony of Dr. Bresnitz to be credible and more persuasive than that of Dr. Criner. The WCJ found that Claimant sustained a work-related injury in the nature of an aggravation or exacerbation of an underlying asthmatic condition and that she was totally disabled from performing her pre-injury duties as of April 1, 1993. In addition to wage loss benefits,[1] the WCJ ordered Em-

---

1. The WCJ awarded benefits effective January 1, 1994, as Claimant was paid full salary through

ployer to pay Claimant's outstanding medical bills as set forth in his Findings of Fact No. 41.

Employer appealed to the Board, which affirmed the WCJ's decision. On appeal to this Court,[2] Employer argues that the WCJ's decision is not supported by substantial evidence. Employer cites Dr. Bresnitz's admission that there are a number of things that presently contribute to Claimant's breathing problems, such as exposure to dogs and cats, cold air, perfume, and dust, as well as exertion and her smoking history. Employer also cites Dr. Bresnitz's statement that Claimant's exposure at school was not the cause of Claimant's symptoms once she left the school. Employer argues that Dr. Bresnitz's testimony was equivocal and cannot support the WCJ's findings.

■ The issue of whether medical testimony is equivocal is a question of law, fully reviewable on appeal. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.)*, 542 Pa. 453, 668 A.2d 131 (1995). When determining whether medical testimony is equivocal, the court must examine the entire testimony as a whole; a determination cannot rest upon a fragment of testimony taken out of context. *Manners v. Workmen's Compensation Appeal Board (McDonald's Restaurant)*, 688 A.2d 786 (Pa. Cmwlth.1997). While Employer relies on several statements taken out of context, a review of Dr. Bresnitz's testimony reveals that he unequivocally opined that the development and exacerbation of Claimant's breathing problems were causally related to her exposure to environmental conditions at her workplace. Dr. Bresnitz elaborated on this opinion, explaining that as a result of Claimant's exposure at work, she has an increased sensitivity to substances to which she previously had no adverse no reaction. Read in its entirety, Dr. Bresnitz's testimony

is unequivocal and constitutes substantial evidence to support the WCJ's decision.

■ Employer argues that the WCJ failed to issue a reasoned decision, as required by Section 422(a) of the Workers' Compensation Act (Act).[3] However, the WCJ's decision contains a summary of the relevant testimony, identifies the grounds relied upon by the medical witnesses, and includes necessary determinations of credibility. Therefore, the WCJ's decision is sufficient for effective judicial review and satisfies the requirements of Section 422(a) of the Act. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa.Cmwlth. 1995).

Employer also contends that the WCJ erred in rejecting the testimony of Dr. Criner. We remind Employer, as did the Board, that the WCJ has exclusive province over questions of credibility and evidentiary weight. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

■ Relying on *Coombs v. Workmen's Compensation Appeal Board (Philadelphia Electric Co.)*, 689 A.2d 996 (Pa.Cmwlth.1997), Employer argues that the WCJ erred in failing to draw an adverse inference based upon Claimant's failure to call a treating physician, noting that Dr. Bresnitz examined Claimant on only one occasion. A WCJ is permitted, but not required, to draw an adverse inference based on a claimant's failure to call attending physicians. *Allingham v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 659 A.2d 49 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 543 Pa. 717, 672 A.2d 310 (1996). Generally, an adverse inference is permissible only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. *Id.*

December 31, 1993. Employer was granted a credit for long-term disability benefits that were paid to Claimant from January 4, 1994 to April 30, 1995.

**2.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of

fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

**3.** Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. § 834.

The *Coombs* court held that the claimant's failure to call his treating physician permitted an adverse inference to be drawn against him, despite the fact that the witness was equally available to his employer. However, *Coombs* is distinguishable from this case, as the claimant in *Coombs* failed to present sufficient evidence to satisfy his burden of proof. Here, the WCJ found Claimant's evidence to be credible and sufficient. Accordingly, the WCJ did not err in failing to draw an adverse inference based on Claimant's failure to present additional or different evidence.

Finally, Employer argues that the WCJ erred in ordering it to pay Claimant's outstanding medical bills as set forth in his Finding of Fact No. 41, which lists each of the items included on the schedule Claimant submitted with her brief to the WCJ. Employer argues that the WCJ erred in considering these medical bills, most of which were paid by Blue Cross/Blue Shield, because they were not properly authenticated and they were not submitted into evidence prior to the close of the record. We agree.

Although the Board granted Employer's request for supersedeas with respect to the payment these medical bills, the Board failed to address this issue in its final decision. We agree with Employer that the Board erred in affirming that part of the WCJ's decision directing Employer to pay medical bills that were not presented as evidence while the record was open. *See St. Mary's Home of Erie v. Workmen's Compensation Appeal Board (Stadtmiller)*, 683 A.2d 1266 (Pa.Cmwlth.1996) (claimant who failed to submit evidence of litigation costs prior to close of the record not entitled to reimbursement).[4] Of course, Employer remains liable for medical bills subsequently incurred by Claimant in connection with her work-related injury.

In addition to a reversal of the Board's order, Employer requests this Court to hold

that Blue Cross/Blue Shield is not entitled to subrogation because it did not assert its rights during the hearings before the WCJ. Claimant counters that the claim petition, which indicates that Claimant seeks reimbursement of medical bills and notes that some bills were paid by the private insurer, preserves Blue Cross/Blue Shield's right to subrogation.[5] We do not reach the question of whether that right was preserved, however, as the extent of that right cannot be determined from the record.[6]

Accordingly, we reverse the Board's order insofar as it affirms the WCJ's order directing Employer to pay Claimant's outstanding medical bills as set forth in Finding of Fact No. 41. In all other respects, we affirm.

### ORDER

AND NOW, August 19, 1998, the order of the Workers' Compensation Appeal Board, at No. A96–2568, dated January 9, 1998, is reversed insofar as it affirms the order of the WCJ directing Employer to pay those medical expenses set forth in Finding of Fact No. 41. The Board's order is affirmed in all other respects.

---

4. The record reflects that Claimant's litigation costs were likewise submitted after the close of the record, but Employer has not challenged the award of these costs.

5. Although the record indicates that a number of items were not paid by the private insurer, the

parties confine their argument to the question of the insurer's right to subrogation.

6. Claimant indicates that Blue Cross/Blue Shield has filed a petition on its own behalf, which has been stayed by the WCJ pending the outcome of this appeal.