**MARRIOTT CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION AP-**
**PEAL BOARD (KNECHTEL),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 17, 2003.
Decided Dec. 5, 2003.

Richard B. Tucker, III, Pittsburgh, for petitioner.

William G. Cohen, New Castle, for respondent.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Marriott Corporation[1] (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated November 25, 2002, affirming an order of a Workers' Compensation Judge (WCJ), dated November 13, 2001, which amended the description of the work injury of Marilyn Knechtel (Claimant) to include depression and which awarded Claimant her costs of litigation. We affirm.

Claimant sustained an injury to her left knee on June 21, 1995, while in the scope and course of her employment as a laundry worker with Employer. Although not part of the record before this Court, it appears that Employer issued a notice of compensation payable (NCP) dated August 11, 1995. On September 3, 1997, Employer filed a modification petition seeking to modify Claimant's benefits on the basis that full-time appropriate work was made available to Claimant which she refused in bad faith. Prior to the filing of the modification petition, Claimant had been working for Employer on a part-time basis with restrictions. Claimant filed a responsive answer, denying the allegations. On August 7, 1998, Claimant filed a claim petition and review petition, both of which requested the WCJ to acknowledge a work-related knee injury as well as post-traumatic stress disorder and depression secondary to the left knee injury. Employer filed responsive answers, denying that Claimant's injury included post-traumatic stress disorder and depression. The above-referenced petitions were consolidated for disposition. It appears that at some point in time, Claimant amended her petition to alternatively allege a mental/mental claim.

During the time period between October, 1997, and March, 2000, several hearings were conducted by the WCJ.

On October 20, 1997, Claimant testified as to the mechanism of her knee injury, her subsequent symptomatology, medical treatment that she received for her knee injury, and limitations that she has on the use of her knee. On April 28, 1999, Claimant testified as to her psychological condition and stated that she believed that it had developed as the result of the work injury to her left knee.

Dr. Robert S. Vandrak, Claimant's physiatrist,[2] provided testimony wherein he described his diagnosis of Claimant's left knee condition. Dr. Vandrak also testified that Claimant was experiencing psychological difficulties.[3] As a result of Claimant's physical and psychological conditions, Dr. Vandrak opined that Claimant was not capable of employment on a full-time basis. Rather, it was his opinion that Claimant was capable of working on a part-time basis with restrictions that he had imposed.

Dr. Mary Anne Murphy, Claimant's consulting psychologist, provided testimony describing the psychological testing that

---

1. It appears that Claimant is employed by The Marriott International, Incorporated, care of Saint Francis Hospital, and the Marriott Corporation is either the insurer, self-insured administrator or third-party administer. (R.R. at 23a). For purposes of this opinion, they shall collectively be referred to as Employer.

2. A physiatrist is a physician who specializes in physical medicine.

3. Dr. Vandrak provided this testimony on June 30, 1998. We note that Claimant did not file her review petition alleging post-traumatic stress disorder and depression until August, 1998, subsequent to Dr. Vandrak's testimony. However, Employer was aware of Claimant's psychological condition in October, 1997, as it was discussed by counsel during a hearing before the WCJ. (R.R. at 55a–63a).

she conducted of Claimant, her findings, and the psychological disorders of which she believed Claimant suffered. She opined that Claimant's psychological difficulties were the result of, and attributable to, the work injury to her left knee.

Claimant's treating psychiatrist, Dr. Matta, who prescribed medications for Claimant, did not testify.

Dr. Patrick G. Ronan, a physiatrist, provided testimony on behalf of Employer. Dr. Ronan testified that he performed an independent medical examination of Claimant's knee. He opined that she was capable of performing work on a full-time basis, subject to limitations. He did not provide any testimony relating to her alleged psychological conditions.

Dr. Bruce Wright, a psychiatrist, provided testimony on behalf of Employer. Dr. Wright testified that it was his diagnosis that Claimant had "a major depression, single episode, complicated by psychosis which was in partial remission." (R.R. at 514a). He testified that it was impossible to say with any certainty if there was a direct causal relationship between the onset of her psychological condition and the work injury to her left knee. (R.R. at 515a–517a). He also testified that Claimant did not meet the criteria for post-traumatic stress disorder.[4]

The WCJ found Claimant's testimony regarding her psychological condition to be credible. (R.R. at A–5). The WCJ also found the testimony of Dr. Murphy as to Claimant's psychological condition to be credible. (R.R. at A–5). The WCJ found the testimony of Dr. Vandrak to be more credible than that of Dr. Ronan as to Claimant's physical condition. (R.R. at A–5). Finally, the WCJ also found the testimony of Dr. Wright relating to Claimant's

psychological condition to be credible to the extent that it is not in conflict with or at variance with the WCJ's ultimate determinations. (R.R. at A–5).

Although the WCJ found the testimony of Dr. Murphy to be credible, he found her testimony to be insufficient to warrant a finding that Claimant suffered from post-traumatic stress disorder or depression as a result of her work injury. The WCJ stated that:

> Dr. Murphy's testimony is psychological in nature, as opposed to psychiatric, and as such, the scope of Dr. Murphy's expertise, both clinical and academic, is limited to subjects within the purview of clinical psychology, and the testimony of record from the claimant is that she has been treated by Dr. Matta, a psychiatrist, and has been provided with both psychiatric treatment and psychotropic mediation in this regard. As such, the treatment and medication provided by Dr. Matta is beyond the scope of Dr. Murphy's expertise, and as such her testimony is insufficient to amend the work injury to include psychiatric treatment and medication as provided by Dr. Matta.

(R.R. at A–6).

The WCJ noted that Employer had argued that an adverse inference should be drawn as to Claimant's inability and/or unwillingness to submit the testimony of Dr. Matta. Claimant had countered that no such inference was proper because such testimony was not submitted due to Dr. Matta's lack of facility in the English language. Based upon the written reports of Dr. Matta, the WCJ rejected Claimant's argument and found Dr. Matta to be sufficiently articulate for purposes of non-jury litigation. (R.R. at A–6). Regardless, the

---

**4.** Employer also presented the testimony of two other individuals who provided testimony

about Claimant's job duties and accommodations made for her at her workplace.

WCJ found the issue as to whether an adverse inference should be drawn to be moot because he had found that Dr. Murphy's testimony, in and of itself, was not sufficient to support the granting of Claimant's review petition. *Id.*

The WCJ concluded that Employer failed to sustain its burden in the context of the modification petition, and, therefore, he dismissed it. The WCJ also concluded that Claimant failed to sustain her burden in the context of the review petition, and, therefore, he dismissed it as well. With regard to Claimant's claim petition, the WCJ concluded that Claimant had sustained her burden as to the description of her work injury as it related to her left knee, but that she failed to sustain her burden as to post-traumatic stress disorder and depression secondary to her left knee injury. Hence, the WCJ granted Claimant's claim petition in part and denied it in part. The WCJ directed Employer to continue to pay indemnity benefits to Claimant, less a deduction for counsel fees. In addition, Employer was directed to reimburse Claimant's counsel in the amount of $3,290.40 for costs of litigation.

Both parties appealed the matter to the Board.[5] By opinion and order dated May 9, 2000, the Board affirmed the WCJ's decision in part and reversed it in part. (R.R. at A–9—A–17). The Board remanded the matter to the WCJ for additional findings of fact and conclusions of law regarding the competency of Dr. Murphy to testify to causation, the testimony of Dr. Vandrak as it pertained to causation and Claimant's mental-mental claim. In all other respects, the WCJ's decision was affirmed. (R.R. at A–9—A–17).

Thereafter, by decision and order dated November 13, 2001, the WCJ issued supplemental findings of fact and conclusions of law. (R.R. at A–18—A–22). The WCJ found that Dr. Murphy, as a psychologist, was competent to testify as to the cause of Claimant's alleged psychological condition, and the WCJ incorporated the findings from his earlier decision that her testimony as to her review of the findings and conclusions of psychological tests of Claimant was credible and accepted. (R.R. at A–20). However, the WCJ found that Dr. Murphy, as a psychologist, was not competent to testify to matters relating to Claimant's use of psychotropic medication, as such exceeded the scope of her expertise and legal authority.[6] (R.R. at A–20).

5. Claimant argued on appeal that the findings and conclusions of the WCJ regarding her alleged depression secondary to her knee injury were not supported by substantial competent evidence. Claimant argued that the WCJ erred as a matter of law in deeming the testimony of her treating psychologist, Dr. Murphy, as legally incompetent. Claimant also argued that the WCJ was required to make findings and conclusions relating to the portion of Dr. Vandrak's testimony pertaining to Claimant's psychological difficulties. Finally, Claimant argued that the WCJ erred in failing to make findings on her mental-mental claim. Employer argued that the WCJ erred in failing to distinguish between Claimant's cost of litigation for the petitions on which she was successful and those on which she was not.

6. We note that the Board incorrectly stated in footnote number one of its opinion dated November 25, 2002, that the WCJ "conceded that Dr. Mary Anne Murphy, the Claimant's treating psychologist, was competent to testify as to causation. He rejected her testimony, however, as being neither credible nor persuasive." A close reading of the WCJ's initial finding of fact number nine and supplemental finding of fact number two reveals that the WCJ accepted Dr. Murphy's testimony as credible with regard to the findings and conclusions of the psychological test she conducted on Claimant. (R.R. at A–5 and A–20). However, it appears that the WCJ may have rejected or discounted Dr. Murphy's testimony in order to effectuate an adverse inference against Claimant as a result of her failure to present the testimony of her treating psychia-

With regard to Dr. Vandrak, the WCJ found that Dr. Vandrak's testimony as to the development and cause of Claimant's depression and associated psychological difficulties was credible and accepted. (R.R. at A–20—A–21). In fact, his testimony as to causation was found to be more credible that of Dr. Wright. (R.R. at A–21). However, the WCJ found that Dr. Vandrak had not addressed the issue of Claimant's use of prescription psychotropic medication or post-traumatic stress disorder.[7] (R.R. at A–21).

As a result of the above-described findings of fact, by order dated November 13, 2001, the WCJ amended Claimant's work injury to include depression.

Employer appealed the WCJ's order to the Board, arguing that Dr. Vandrak, who is board certified in medicine and rehabilitation, was legally incompetent to testify as to the issue of whether or not Claimant's diagnosis of depression is causally related to the work injury of June 21, 1995. (R.R. at A–27). Also, Employer again argued that the WCJ erred as a matter of law in awarding litigation costs which did not distinguish between Claimant's costs of litigation for the petitions where she was successful and those where she was not.

By opinion and order dated November 25, 2002, the Board affirmed the WCJ's order dated November 13, 2001. Employ-er then filed the instant petition for review with this Court.

On appeal,[8] Employer argues that Dr. Vandrak's medical opinion as to Claimant's psychological condition was incompetent as a matter of law because it exceeded his area of expertise and was not based on a complete medical history relating to Claimant's depression or treatment for depression. Employer argues that it was entitled to an adverse inference because Claimant did not present the testimony of her treating psychiatrist, Dr. Matta, in order to establish a causal relationship between her work-related injury and depression. In addition, Employer argues that the Board erred when it concluded that the WCJ properly expanded Claimant's injury to include depression because there was no substantial evidence to support the WCJ's finding that Claimant's depression was caused by her work-related injury because the medical testimony she submitted was both equivocal and incompetent. Finally, Employer argues that the WCJ and Board erred as a matter of law in awarding litigation costs which do not distinguish between Claimant's costs of litigation for the petitions on which she was successful and those on which she was not.

■ First, we will address Employer's argument that Dr. Vandrak was not competent to render an expert opinion as to

---

trist, Dr. Matta. The WCJ's opinion is not clear as to this point.

7. The WCJ also found that the record was devoid of any objective evidence corroborating Claimant's perception of her work environment. As such, she was unable to establish a necessary element of a mental-mental case. (R.R. at A–21). As Claimant did not appeal the Board's order, this issue is not before the Court at this time.

8. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, con-stitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's recent decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

Claimant's psychological condition because he was neither a psychologist nor a psychiatrist. (R.R. at 259). Rather, Dr. Vandrak was Claimant's treating physician for her knee injury, and he did not treat her for her psychological condition. (R.R. 259a).

Dr. Vandrak provided the following testimony regarding Claimant's psychological condition, to which the Employer objected on the ground that it was beyond his area of expertise and specialty:

Q: Until you are opinion [sic],[9] does she suffer from any psychological problems relating to this injury?

[Counsel for Employer]: I'm going to object to this question on the grounds it's beyond the doctor's area of expertise and specialty therefore, he is not competent to discuss that.

Q: I take it you are not Board certified as [a] psychiatrist?

A: No.

Q: You are not a psychologist?

A: No.

Q: Have you, during the course of your career, had the opportunity to take various courses related to psychological or psychiatric aspects of injuries on patients?

A: I served as director at East Liverpool Hospital in the chronic pain program and in that capacity I worked as a team approach with the psychiatrists and psychologists on numerous occasions regarding pain and how it could affect psychologically in regard to depression and things of that nature and in that regard, I feel I am an expert. I deal with chronic pain and I felt that Mrs. Knechtel had depression related to this whole incident with marked de-

crease in function effecting her self esteem and the fact she could not work in her full capacity I think it has affected her psychologically.

Q: And in your opinion is this aspect of her depression related to her work injury of June 14, 1995.

[Employer's Counsel]: Again I would lodge an objection to the question on the same grounds it's I don't understand the area of.

[Claimant's Counsel]: I understand you have a continuing objection to this.

Q: Go ahead.

A: Yes.

Q: And is this related to the physical aspect of her knee injury.

A: In that regard I would say it could be a contributing components [sic]. I did not take a complete psychological inventory of all the other stressors involved in her life. If are you asking if the depression could be related to the knee injury and pain, I would say yes.

Q: I'm not asking if it could be, I'm asking if in your opinion the physical aspect ... [o]f the knee injury of June 14, 1995 is a significant contributing factor or substantial contributing factor to her present symptoms of depression?

A: Yes.

(R.R. at 280a–283a).

Generally, a physician is competent to testify in specialized areas of medicine even though that physician is not a specialist in, or certified in, those fields. *Kocher v. Workmen's Compensation Appeal Board (B.G. Coon Construction Co.)*, 52 Pa.Cmwlth. 106, 415 A.2d 162 (1980). Furthermore, a physiatrist, such as Dr. Vandrak, has been held to be competent to

9. The transcribed testimony was probably intended to read *"In your opinion, does she*

suffer from a psychological problem. . . ."

render an opinion on psychiatric issues. *Nelson v. Workmen's Compensation Appeal Board (Elliott Co., Division of Carrier Corp.),* 106 Pa.Cmwlth.301, 525 A.2d 1284 (1987). Hence, the fact that Dr. Vandrak is a physiatrist does not render him incompetent to testify as to Claimant's psychological condition. Moreover, Dr. Vandrak testified as to his experience as Director of the Chronic Pain Program at East Liverpool Hospital and how that experience included dealing with aspects of pain and related depression. (R.R. at 281a–282a). He testified that he considered himself to be an expert in this area. *Id.* Employer did not develop any testimony on cross-examination that would contradict such an assertion. Hence, the Board did not err when it concluded that the WCJ did not err in relying on Dr. Vandrak's testimony relating to Claimant's psychological condition.

■ Second, we will address Employer's argument that Dr. Vandrak was not competent to render an expert opinion as to Claimant's psychological condition because he never reviewed any reports or records from her treating psychiatrist and his own records and reports did not address the issue of Claimant's depression. Claimant contends that Employer waived these arguments because it failed to preserve them. Employer asserts that it properly preserved these arguments during the deposition when it objected to Dr. Vandrak's competency based upon the grounds that the scope of his testimony was "beyond the doctor's area of expertise and specialty." (R.R. at 280a–281a). Similarly, Employer asserts that it again preserved these arguments when it filed a written preservation of that same objection with the WCJ and raised it before the Board. (R.R. at 574a, 583a–584a).

With regard to the waiver of issues, this Court in *Wheeler v. Workers' Compensation Appeal Board (Reading Hospital and Medical Center),* 829 A.2d 730 (Pa.Cmwlth. 2003), wrote:

> It is well established that an issue is waived unless it is preserved at every stage of the proceeding. The strict doctrine of waiver applies to a workers' compensation proceeding. The purpose of the waiver doctrine is to ensure that the WCJ is presented with all cognizable issues so that the 'integrity, efficiency, and orderly administration of the workmen's compensation scheme of redress for work-related injury' is preserved.

*Wheeler,* 829 A.2d at 735. (Citations omitted). The Court in *Wheeler* also stated that "[i]t is well established that objections to a witness' competency to testify at the deposition are waived if they are not raised before or during the deposition where the ground for the objections are known to the objecting party." *Wheeler,* 829 A.2d at 735.

In addition, 34 Pa.Code § 131.66(b), relating to the admissibility of oral depositions, is applicable to the type of deposition given by Dr. Vandrak. It provides as follows:

> (b) Objections shall be made and the basis for the objections stated at the time of the taking of the depositions. Only objections which are identified in a separate writing, introduced prior to the close of the record, and stating the specific nature of the objections and the pages where they appear in the deposition will be preserved for ruling. Objections not so preserved will be waived.

34 Pa.Code § 131.66.

Employer objected to Dr. Vandrak's testimony on the basis that Dr. Vandrak was not competent to testify to Claimant's psychological condition because it was beyond his expertise and specialty. In addition, Employer's written objection to the depo-

sition stated only an objection to competency based on Dr. Vandrak's area of expertise and specialty. (R.R. at 574a). Such objections do not have the effect of preserving the argument that Dr. Vandrak was not competent to testify because he had not reviewed certain records and created certain records of his own. The above-described bases for objections are separate and distinct from each other and one does not necessarily include the other. For that reason, we find that Employer failed to preserve an objection that Dr. Vandrak was not competent to render an expert opinion as to Claimant's psychological condition because he never reviewed any reports or records from her treating psychiatrist and his own records and reports did not address the issue of Claimant's depression.[10]

Employer also argues that it was entitled to an adverse inference because Claimant did not present the testimony of her treating psychiatrist, Dr. Matta, in order to establish a causal relationship between her work-related injury and depression. This Court, in *Allingham v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 659 A.2d 49 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 543 Pa. 717, 672 A.2d 310 (1996), discussed the imposition of an adverse inference in the context of the "missing witness" rule. The missing witness rule provides that "[w]here evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and with-

out satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." *Allingham*, 659 A.2d at 53 (citing *Haas v. Kasnot*, 371 Pa. 580, 584, 92 A.2d 171, 173 (1952)). Our Court in *Allingham* noted that the Supreme Court, in *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), interpreted the missing witness rule to be inapplicable if the witness in question is equally available to both sides in the litigation. *See Allingham*. "In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach of and knowledge of only one of the parties." *Allingham*, 659 A.2d at 53 (citing *Bentivoglio*, 447 Pa. at 29, 288 A.2d at 748).

Applying the missing witness rule as instructed by our Supreme Court, this Court in *Allingham* declined to impose an adverse inference where the claimant failed to provide testimony of his treating cardiac physicians as to his cardiac conditions and total disability when the treating cardiac physicians were known and equally available to the claimant and the employer. *See Allingham*. The Court concluded that there was no legal significance to the lack of testimony from the claimant's treating cardiac physicians. *See Allingham*. A similar result was reached by this Court in *William Penn School District v. Workers' Compensation Appeal Board (Westerman)*, 717 A.2d 589 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 568 Pa. 652, 794 A.2d 365 (1999), where a claimant failed to provide the testimony of her treating physician regarding pulmo-

---

10. Additionally, we note that "the fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Samson Paper Company and Fidelity Engraving v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221, 1224 (Pa. Cmwlth.2003). Moreover, we disagree with Employer that the record establishes that Dr. Vandrak did not review any reports or records prepared by Dr. Matta. (R.R. at 280a–283a). The testimony cited by Employer establishes only that Dr. Vandrak was not asked whether he had reviewed any reports or records prepared by Dr. Matta. *Id.* Hence, even if Employer properly preserved its objection to the testimony of Dr. Vandrak, the testimony would be admissible.

nary problems that she was experiencing as a result of exposure to mold and fungus in the workplace.[11]

Based upon the Court's reasoning in *Allingham,* the WCJ in this case was not permitted to impose an adverse inference as a result of Claimant's failure to provide the testimony of Dr. Matta because Dr. Matta was not particularly within the reach and knowledge of Claimant. Rather, Employer could have obtained the testimony from Dr. Matta had it chosen to do so. In the initial finding of fact number nine and the supplemental finding of fact number two, the WCJ appears to incorrectly acknowledge that Employer is entitled to an adverse inference as a result of the failure of Claimant to provide testimo-

ny by Dr. Matta, her treating psychiatrist. (R.R. at A–5 and A–20). It is difficult to discern from the WCJ's opinion and order dated November 13, 2001, whether the WCJ actually drew an adverse inference in making the determination. Regardless, the WCJ concluded that Claimant "sustained her burden of establishing the development of depression [was] related" to her work injury. (R.R. at A–21). In the event that the WCJ did impose an adverse inference, we conclude that such imposition constituted harmless error, as the WCJ ultimately concluded that Claimant met her burden.

■■■ As to Employer's general argument that Claimant failed to present sub-

11. We recognize that this Court has at times concluded in similar cases that it is permissible, although not required, for the WCJ to draw the inference that, had the testimony of the treating doctor been adduced, it would have been unfavorable to the claimant. *See Coombs v. Workmen's Compensation Appeal Board,* 689 A.2d 996 (Pa.Cmwlth.1997); *Antoniadis v. Workmen's Compensation Appeal Board (Camil Olimac, Inc.),* 154 Pa.Cmwlth. 212, 623 A.2d 422 (1993), both of which rely upon this Court's holding in *Holshue v. Workmen's Compensation Appeal Board (Robideau Express),* 84 Pa.Cmwlth.253, 479 A.2d 42 (1984). However, this Court in *Allingham* choose not to apply the holding set forth in *Holshue,* stating that "[t]his Court's decision in *Holshue* relied on *Ferne v. Chadderton,* 363 Pa. 191, 69 A.2d 104 (1949), a case that antedates the [Supreme Court's] *Bentivoglio* decision." Instead our Court relied upon the holding in *Bentivoglio* when deciding the *Allingham* case. Arguably, the Court again applied the reasoning of *Holshue* when it concluded in *Coombs* that a WCJ did not err when it drew an adverse inference from the claimant's failure to produce his treating physician as a witness. Regardless, the Court later distinguished the decision in *Coombs,* by stating that "the claimant in *Coombs* failed to present sufficient evidence to satisfy his burden of proof." *William Penn School District,* 717 A.2d at 593. The Court in *William Penn School District* then went on to adopt the reasoning set forth in *Allingham.* We recog-

nize that the Court recently cited *Holshue* for the proposition that it is permissible for the WCJ to draw the inference that, had the testimony of the treating doctor been adduced, it would have been unfavorable to the claimant. *See Samson.* However, in *Samson,* the Court concluded that the WCJ did not err when it failed to impose an adverse inference when the claimant failed to present the testimony of her treating physician regarding her carpal tunnel syndrome. Finally, in another recent case, this Court in *PNC Bank Corporation v. Workers' Compensation Appeal Board,* 831 A.2d 1269 (Pa.Cmwlth.2003), applied the missing witness rule as directed by our Supreme Court in *Bentivoglio.* The Court in *PNC Bank* concluded that the WCJ did not commit an error when he failed to draw an adverse inference based upon the decedent's husband's failure to present the testimony of the decedent's children regarding the marital status of their mother when a common law marriage was at issue. The court reasoned that the children were not within the reach and knowledge of only one party. Although the case law appears at times to be conflicting, we cannot find recent case law on point that applies the Supreme Court's holding in *Holshue* to conclude that a WCJ erred when it failed to impose an adverse inference when a claimant does not present the testimony of the treating physician, when that treating physician is available to both parties. Hence, we will apply the holding of the *Allingham* case to the case at hand, as discussed above.

stantial evidence that her depression occurred as a result of her work injury, our review of the record reveals that substantial evidence exists to support such a claim. Claimant presented the testimony of two medical professionals who testified as to the causal relationship between the work injury and Claimant's depression—Dr. Vandrak, her treating physiatrist, and Dr. Murphy, a psychologist. Employer's psychologist, Dr. Wright, concurred that Claimant suffers from depression. While Dr. Wright testified that it could not be determined whether the depression occurred as a result of Claimant's work injury or other factors in her life, the WCJ found him to be less credible and persuasive than Dr. Vandrak as to the issue of causation. It is well established that where the Board takes no additional evidence, the WCJ is the final arbiter of credibility and the weight to be accorded evidence. *Vols v. Workmens' Compensation Appeal Board (Alperin, Inc.)*, 161 Pa. Cmwlth.497, 637 A.2d 711 (1994). The WCJ may accept or reject, in whole or in part, the testimony of any witness. *See Vols.*

Finally, as to Employer's argument that the WCJ and Board erred as a matter of law in awarding litigation costs which do not distinguish between Claimant's costs of litigation for the petitions on which she was successful and those on which she was not, we find that the WCJ and Board did not err. While addressing this argument, the Board wrote:

As to [Employer's] argument that that the WCJ erred in directing the [Employer] to reimburse the Claimant's litigation costs without first distinguishing between the costs of prosecution for the Petitions where Claimant was successful, and those where she was not successful, the Board addressed that

complaint in its Opinion and Order of February 20, 2001. The Board stated:

The parties agreed to consolidate the three Petitions for resolution. As a practical matter, it would be almost impossible to attribute the costs among the three Petitions. This is especially true in light of the fact that the Claimant presented her psychiatric expert testimony not only in conjunction with her Review and Claim Petitions, but also in an effort to defend against the Modification Petition. Thus, we find no error on the part of the WCJ in failing to segregate the costs of litigation attributable to the defense of the Modification Petition from those attributable to the prosecution of the Review/Claim Petition.

Opinion and Order dated 2/20/01, p. 6.

(R.R. at A–29—A–30). The Board's reasoning on this point is sound, and we adopt it as our own.

Accordingly, the order of the order of the Board, dated November 25, 2002, is hereby affirmed.

### *ORDER*

AND NOW, this 5th day of December, 2003, the order of the Workers' Compensation Appeal Board, dated November 25, 2002, is hereby affirmed.