IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Pennsylvania State University and Sedgwick CMS, | : <br> : <br> : <br> : |
| Petitioners | : <br> : |
| v. | : No. 901 C.D. 2017 <br> : Submitted: January 5, 2018 |
| Workers' Compensation Appeal Board (Mason), | : <br> : <br> : |
| Respondent | : |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  May 9, 2018


The Pennsylvania State University and Sedgwick CMS (together, Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) to grant the claim petition filed by Kimberly Mason (Claimant) and modifying the decision to reflect a denial of Employer's termination petition.  We affirm.

Claimant began working for Employer as a food preparer in 1992. During her shift on July 30, 2014, she suffered an injury while lifting a 40-pound container of liquid eggs.  On August 13, 2014, Employer issued a medical only notice of compensation payable (NCP) recognizing a work injury in the nature of a

thoracic muscle strain.[1]  On November 17, 2014, Claimant, then proceeding *pro se*, filed a claim petition asserting that she was disabled as a result of a September 18, 2014 work injury.[2]  Claimant subsequently amended the claim petition to allege an injury date of July 30, 2014.  WCJ's Finding of Fact (F.F.) No. 7.  On December 7, 2015, Employer filed a termination petition alleging that Claimant was fully recovered from the July 2014 work injury as of November 10, 2015.  The petitions were consolidated for hearings before the WCJ.

At a March 13, 2015, hearing before the WCJ, Claimant testified that she began feeling pain immediately after the July 30, 2014 incident.  She stated that she finished her shift, went to see her chiropractor, and returned to work the next day.  Claimant informed Employer of her injury, and Employer referred her to Occupational Medicine for medical care.  She was seen by Occupational Medicine on August 6, 2014, which restricted her to working modified duty.

Claimant said that she began feeling increased pain in her neck and shoulders and she subsequently made an appointment with an orthopedic doctor, Dr. Suhey.  On August 29, 2014, Dr. Suhey imposed additional work restrictions, but Employer advised her that no lighter duty work was available.  Claimant stated that she exhausted all of her vacation and sick time and returned to work on September 17, 2014, when Dr. Bates of Occupational Medicine released her to full duty.

---

[1] The NCP incorrectly stated the injury date as July 29, 2014, and the Board formally amended the NCP to reflect an injury date of July 30, 2014.  Board's June 14, 2017 decision at 14.

[2] When a medical only NCP has been issued, a claimant must file a claim petition to establish disability.  *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015).

Claimant testified that the following day she felt a painful pull in her neck while she was lifting a 40-pound bucket of potatoes. She said her pain became so severe that she left work in tears and was not able to return.

Dr. Suhey referred Claimant to an orthopedic surgeon, Dr. Sefter, who recommended surgery, and she then sought a second opinion from Gregory Bailey, D.O. Dr. Bailey also recommended surgery, and Claimant underwent a discectomy and spinal fusion on December 21, 2014. Claimant stated that she continued to see Dr. Bailey and has physical therapy twice a week. Claimant did not believe she was capable of returning to her pre-injury position

Claimant also presented Dr. Bailey's October 6, 2015, deposition testimony. Dr. Bailey, a board-certified orthopedic surgeon, stated that when he first saw Claimant on October 28, 2014, she complained of neck pain and pain radiating into the interscapular region between her shoulder blades and arms. He said that his office notes reflect an August 6, 2014 date of injury, but he was aware that the injury occurred on July 30, 2014, when Claimant was lifting a container of liquid eggs. Dr. Bailey was not aware of any subsequent work injury on September 18, 2014.

Dr. Bailey testified that Claimant reported pain in her neck and shoulder blade area that began immediately after she lifted a 40-pound box at work. He said that at the time of Claimant's first visit, she had undergone chiropractic treatment and physical therapy and had taken various pain medications without improvement of her symptoms. Based on his physical examination of Claimant and his review of a September 2, 2014 MRI, Dr. Bailey diagnosed Claimant with a pre-existing cervical spondylosis that was exacerbated by the lifting incident, creating her complex symptoms.

3

Dr. Bailey stated that after considering Claimant's prior course of non-operative care with continued discomfort, he recommended surgery. On December 12, 2014, Dr. Bailey completed the surgery, which included a decompression and fusion involving the discs at C4-5, C5-6, and C6-7. Dr. Bailey testified that the need for surgery was related to the exacerbation of Claimant's pre-existing conditions resulting from the July 30, 2014 work incident.[3] He said that when he saw Claimant again on December 30, 2014, she was showing some improvement, but he continued her restrictions on lifting and range of motion and stated that she could not return to her pre-injury occupation.

During cross-examination, Dr. Bailey confirmed his understanding that Claimant's condition was not related to an incident of September 18, 2014. Dr. Bailey also confirmed his understanding that Claimant had been treated for a chronic condition, including significant arthritic changes, and he acknowledged that records of other providers did not include references to the work injury. He declined to offer any opinion on the notes of other physicians, and he was unwilling to make assumptions based on their records. He explained that the worsening of Claimant's symptoms over the years did not indicate the absence of a work injury, and he repeated that he relied on the history of the work injury Claimant provided him.

On re-direct examination, Dr. Bailey reviewed an Occupational Medicine note of August 6, 2014, which reflected that Claimant presented herself for evaluation of upper back pain after injuring herself at work on July 30, 2014, while lifting a 40-pound case of liquid eggs.[4] He stated that the history detailed in

---

[3] At the March 4, 2015 hearing, Claimant amended her claim petition to seek benefits for disfigurement associated with a scar resulting from the December 12, 2014 surgery.

[4] In relevant part, the "Individual Encounter" form, dated August 6, 2014, states:

that office note was consistent with the description of the work injury Claimant provided him. Reproduced Record (R.R.) at 175-77.

Employer presented the deposition testimony of Victor J. Thomas, M.D., a board-certified orthopedic surgeon, who conducted an independent medical examination (IME) of Claimant on November 10, 2015, and reviewed Claimant's medical records. Dr. Thomas believed that Claimant's complaints were related to her pre-existing conditions and were not the result of an aggravation or exacerbation by any work incident on July 30, 2014.

The WCJ set forth the witnesses' testimony in detail. WCJ's Finding of F.F. Nos. 8-11. The WCJ accepted Claimant's testimony as credible in its entirety.[5] The WCJ also accepted Dr. Bailey's testimony as credible and

---

> Pt presents today for evaluation of pain in her upper back after injuring herself a week ago at work on 7/30/14. She works as a cook, and notes that she was lifting a 40lb case of liquid eggs when she turned and felt pain between her shoulder blades. She notes that the pain was sharp and took her breath away. . . .

Record Item No. 24, Exhibit Bailey 9.

[5] In Finding of Fact 12(d), the WCJ explained:

> [T]he testimony of [Claimant] is found to be credible and is accepted in its entirety. [Claimant] testified before the undersigned in a very direct, non-evasive manner, and with honest and open demeanor. Despite significant cross-examination, [Claimant] maintained a personable, non-adversarial, open and honest demeanor during the same. She displayed a clear intent of having wanted to continue working, hoping to avoid any significant lost time, despite her pain complaints, even returning to work without restrictions under Dr. Bates' release, working until her persistent symptoms recurred to the point where she could no longer perform her duties after September 18, 2014.

unequivocal and consistent with Claimant's testimony.[6]  The WCJ found the contrary testimony of Dr. Thomas not credible, noting, among other things, that his

R.R. at 13.

[6] In Finding of Fact No. 12(e), the WCJ stated:

> In reaching these findings, the testimony and opinions of Dr. Bailey are found to be unequivocal, credible, probative and persuasive, and are accepted.  Dr. Bailey acknowledged that there are some inconsistencies in the history of complaints as heavily relied upon by [Employer] in defending this matter, from reviewing the medical records of Drs. Suhey and Sefter, and he was not aware of a subsequently asserted September 18, 2014 second potential injury date, such that he was not basing his opinions of a work related injury upon that subsequent September 18, 2014 date of injury.  However, from review of his testimony in its entirety, in conjunction with the remaining evidentiary record, his overall opinions and basis for the same, are that the Claimant's lifting incident of the forty-pound case of liquid eggs while at work did result in an acute aggravation of her symptomatology superimposed upon her pre-existing condition, resulting in cervical nerve irritation, resulting in her subsequent disability and ultimate surgery.  Dr. Bailey's testimony, including his history obtained from the Claimant, is found to be consistent with the Claimant's credible testimony as to the initial onset of these acute symptoms occurring during the liquid egg lifting incident of July 30, 2014 and recognized in the initial Medical[] Only Notice of Compensation Payable, albeit for a date of July 29, 2014, described as a thoracic injury.  As noted by Dr. Bailey, such history is corroborated by some of her treatment records at Penn State Occupational Medicine.  It is noted that Dr. Bailey, as with the Claimant, despite being subject to fairly extensive cross-examination, with respect to the records of Drs. Martin & Suhey, did not waiver in his convictions.

R.R. at 13.

6

testimony completely discounted Claimant's assertions, which were credited by the WCJ.[7] F.F. No. 12(f).

The WCJ concluded that Claimant met her burden of proving she sustained a compensable work injury on July 30, 2014, and granted the claim petition. The WCJ awarded compensation for total disability effective September 19, 2014, and 41.25 weeks of compensation for permanent disfigurement. The WCJ did not specifically address Employer's termination petition in his conclusions of law or order.[8]

Employer appealed to the Board, arguing that the WCJ's findings of fact were not supported by competent evidence and, specifically, that Dr. Bailey's testimony was equivocal. The Board affirmed the WCJ's decision to grant Claimant's claim petition, modified the WCJ's decision to reflect an express denial of Employer's termination petition, and, for clarification, amended the medical only NCP to reflect the correct injury date of July 30, 2014.

---

[7] It is a fundamental tenet of workers' compensation law that the WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). As the ultimate fact-finder, the WCJ's findings are binding on appeal if they are supported by substantial evidence. *Agresta v. Workers' Compensation Appeal Board (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004).

[8] The WCJ issued a decision on July 22, 2016, and then issued an amended decision and order on July 26, 2014, which awarded Employer credit for unemployment compensation benefits and sickness and accident benefits paid to Claimant and reaffirmed the original decision in all other respects.

On appeal to this Court,[9] Employer again asserts that Dr. Bailey's testimony was equivocal and, therefore insufficient to support the WCJ's findings regarding causation. We disagree.

In a claim proceeding, the claimant bears the burden to prove all elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). If the causal relationship between the injury and the disability is not obvious, unequivocal medical evidence is needed to establish that connection. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015). A medical expert's testimony is unequivocal if, after providing a foundation, the witness testifies that in his or her professional opinion he or she believes or thinks certain facts exist. *Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). "However, the law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Id.*; *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 134-35 (Pa. Cmwlth. 1983).

Whether medical testimony is equivocal is a question of law subject to this Court's review. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel)*, 668 A.2d 131, 133 (Pa. 1995); *Bemis*, 35 A.3d at 72. "In making that determination, we examine the testimony of a witness as a whole and do not take words or phrases out of context." 35 A.3d at 72; *City of Wilkes-Barre v.*

---

[9] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of facts are supported by substantial evidence. *Berry v. Workers' Compensation Appeal Board (United Minerals & Grain Corp.)*, 602 A.2d 415, 417 (Pa. Cmwlth. 1992).

8

*Workmen's Compensation Appeal Board*, 420 A.2d 795, 797-98 (Pa. Cmwlth. 1980).

Employer cites *Lewis v. Commonwealth*, 498 A.2d 800 (Pa. 1985), and this Court's unreported opinion in *US Airways, Inc. v. Workers' Compensation Appeal Board (Genovese-Smith)*, (Pa. Cmwlth., No. 1278 C.D. 2015, filed May 11, 2016), *appeal denied*, ___ A.3d ___ (Pa., No. 302 WAL 2016, filed December 21, 2016),[10] in support of its contention that Dr. Bailey's opinion as to causation is equivocal. In *Lewis*, the claimant's medical expert testified that the episode "could have" been the cause of the claimant's problem and that the aggravation of the claimant's pre-existing condition "could have been caused at the time of the injury." 498 A.2d at 801, 802. The Court acknowledged one, isolated, unequivocal statement made by the claimant's witness but concluded that, when examined as a whole, his testimony was equivocal and therefore insufficient to establish causation.

Similarly, in *US Airways*, slip op. at 9-10, we explained:

> Dr. Baddar, however, did not state at any point in his testimony that in his opinion, Claimant's fall or her contusion or laceration aggravated or worsened her arthritis or that, in his opinion, the need for hip replacement was caused by the fall or Claimant's accepted work injury. To the contrary, Dr. Baddar repeatedly made clear on both direct and cross-examination that he was only offering an opinion that the fall "could have" advanced or worsened Claimant's arthritis . . . . Such testimony that a causal connection is possible or that it is a reasonable explanation does not constitute competent evidence [of causation].

---

[10] *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

9

In this matter, however, Dr. Bailey testified that, as he understood the facts, Claimant's work injury occurred on July 30, 2014, when she lifted a 40-pound box at work, which incident was acknowledged by Employer in the medical-only NCP. Further, Dr. Bailey specifically stated that the incident described by Claimant caused her pre-existing condition to become symptomatic:

> Q. Okay. Doctor, the diagnosis that you gave her on that day, could you explain how it would comport with the injury she described to you on that visit?
>
> A. Yes. I believe she has pre-existing breakdown of the cervical spine. We call it cervical spondylosis. Think of it as arthritis involving the cervical discs. And she's a middle aged 45 year old female and most likely had this for several years and appeared to be doing quite well, but then the lifting of the significant weight, 40 pounds --- she's not a very large person as I recall --- was enough to put some forces across the neck that irritated the nerve roots as they exit the cervical spine. And with the pre-existing spondylosis or nerve compression, it created her symptom complex.
>
> Q. Okay. And Doctor, with someone who has degenerative changes that was [sic] shown on the MRI, could those degenerative changes become aggravated by an acute type of injury?
>
> A. Yes, very much so . . . .
>
> Q. [E]ven if someone has these changes in their neck, could those changes be asymptomatic and then actually become symptomatic through an acute type of injury?
>
> A. Yes.

R.R. at 129-130. Although Dr. Bailey stated on cross-examination that the incident described by Claimant "could absolutely lead to irritation of the nerves as I describe

that she's had," R.R. at 160, his isolated use of the word "could" on cross-examination does not undermine the effectiveness of his previously expressed opinions. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board (Jakel)*, 377 A.2d 1007, 1010 (Pa. Cmwlth. 1977).

Employer also argues, *without elaboration or citation to legal authority*, that where the WCJ failed to rule on its termination petition, the Board abused its discretion by modifying the WCJ's decision and a remand to the WCJ is warranted. We note that in a termination proceeding the employer bears the burden of proving that all work-related disability has ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir)*, 705 A.2d 1290, 1293 (Pa. 1997). Where the claimant complains of continued pain, this burden is met when the WCJ credits unequivocal testimony of the employer's medical expert that the employee is fully recovered, can return to work without restrictions, and there are no objective findings that either substantiate the claims of pain or connect them to the work injury. *Id.*

In this case, the WCJ did not expressly deny Employer's termination petition, but the WCJ did expressly reject the testimony of Employer's medical expert, Dr. Thomas. F.F. No. 12(f). Under these circumstances, Section 424 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §855,[11] authorizes the Board to modify the WCJ's decision and make conclusions of

---

[11] Section 424 states:

> Whenever an appeal shall be based upon an alleged error of law, it shall be the duty of the board to grant a hearing thereon. The board shall fix a time and place for such hearing, and shall serve notice thereof on all parties in interest.

11

law, which are then subject to appeal to this Court. *Carmen Paliotta General Construction v. Workmen's Compensation Appeal Board (Tribuzio)*, 528 A.2d 274, 277-78 (Pa. Cmwlth. 1987) (stating that while findings of fact and credibility determinations are entirely within the province of the WCJ, Section 424 demonstrates the clear legislative intent to vest in the Board the final authority to make conclusions of law, which are then subject to appeal to this Court). Based on the WCJ's findings and credibility determinations, we conclude that the Board properly modified the WCJ's decision to reflect a denial of Employer's termination petition.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.
Judge Cohn Jubelirer did not participate in the decision of this case.

---

As soon as may be after such hearing, the board shall either sustain or reverse the referee's award or disallowance of compensation, or make such modification thereof as it shall deem proper.

77 P.S. §855.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania State University
and Sedgwick CMS,                          :
                                           :
                                           :
                    Petitioners            :
                                           :
            v.                             : No. 901 C.D. 2017
                                           :
Workers' Compensation                      :
Appeal Board (Mason),                      :
                                           :
                    Respondent             :

# O R D E R

AND NOW, this 9th day of May, 2018, the order of the Workers'
Compensation Appeal Board, dated June 14, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge