**Sharon AGRESTA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOROUGH OF MECHANICSBURG), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 2004.

Decided June 4, 2004.

Ian J. Blynn, Harrisburg, for petitioner.

Mary T. Stark, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, SIMPSON, Judge, JIULIANTE, Senior Judge.

OPINION BY President Judge COLINS.

Sharon Agresta petitions for review of the order of the Workers' Compensation Appeal Board in which it affirmed the denial of her claim petition for total disability benefits in connection with an alleged work-related depression and anxiety disorder.

In May 2001, Agresta filed a claim petition in which she sought total disability benefits from September 12, 2000 for severe depression and anxiety disorder, which she alleged was caused by the chief of police accusing her of being mentally incompetent to be a police officer. The claim petition pinpoints the date of injury as September 3, 2000. The employer, Borough of Mechanicsburg, denied all material allegations and raised a number of defenses.

At hearings before a workers' compensation judge, Agresta testified as follows. She worked as a patrol officer for the Borough from September 1987 until May 2001. She began to feel depressed in 1998, after she responded to a hit-and-run accident in which a teenager was killed and later was called upon to prevent a potential suicide. She sought treatment for depression in March 1999 and continued working, but she felt irritable and sometimes was forgetful and had trouble completing paperwork on time. After police chief David Spotts was hired in January 2000 and she disclosed her depression and related difficulties to him in an interview in September 2000, she was put on paid administrative leave and sent for evaluation of her fitness for duty. Her paid leave ended in October 2000, and she used up her accumulated leave in November 2000. Agresta felt that she had been treated differently from other officers with disabilities in that she had not been offered light duty and was told that she could no longer

work with the Borough's forensic evidence collection team, even on a voluntary basis, because of her mental state. Her depression worsened after she received a December 2000 letter from Chief Spotts in which he informed her that her return to duty would be contingent on passing a fitness for duty evaluation and that she could not participate in the forensic team activities. She is under the care of psychologist Dr. Michael Greevy and began collecting non-duty-related disability benefits. She believes she was treated unjustly by Chief Spotts, who she perceives as having made her life worse after she informed him of her depression. She acknowledged that she was dissatisfied with her job before January 2000, that she received psychiatric treatment as a teenager, and that events in her personal life were stressful as well.

Agresta's treating psychologist, Dr. Greevy, testified as follows. He first examined Agresta in April 2001, at which time she had a history of depression and anxiety; he diagnosed her illness as severe depression and borderline personality traits. He opined that her depression was caused or aggravated by the work events beginning in September 2000. He did not recommend that she return to full-time police work because of her bitterness, anger, and self-doubt, but he said he would approve part-time police work. Dr. Greevy acknowledged that Agresta had been hospitalized as a teenager for psychiatric treatment, had a family history of alcoholism, and was subject to stressors unrelated to her work, such as a pending bankruptcy, marital difficulties, and the deaths of her in-laws.

Police chief David Spotts, testifying for the Borough, said he met individually with all members of the police department beginning in April 2000 and asked the same set of questions of each person. He said that following his interview with Agresta in September 2000 during which she voluntarily told him that she was depressed and taking antidepressants, he became concerned that perhaps she should not be working as a police officer. After consulting with the mayor and an attorney, he placed Agresta on paid administrative leave and sent her for a fitness-for-duty mental health evaluation with Dr. Larry Walker, who found her to be unfit for duty. He said that she was entitled to psychological treatment under the collective bargaining agreement but that she did not pursue such treatment. He explained that Agresta sought a second fitness-for-duty evaluation with Dr. David Rogers, who also opined that she was unfit for duty.

Chief Spotts explained the importance of mental fitness in police work, a high stress job that requires the ability to remain calm and make life or death decisions. He testified that Agresta never sought light duty and never told him that he thought she was subjected to abnormal working conditions. He said that he turned down her request to work full time as an evidence technician because police department resources would not permit the assignment of an officer full time to that job and because a defense attorney might discover her mental health problems and use the information to discredit evidence she collected or handled.

The Borough presented the medical deposition testimony of Dr. Abram Hostetter, a board-certified psychiatrist who examined Agresta in March 2002 and reviewed her medical records. He diagnosed her as suffering with a borderline personality disorder stemming from a history of psychiatric difficulties and dysfunctional family background. He opined that Agresta's psychiatric problems were not caused by her work, but that she seemed to have a hostile attitude toward the Borough police department, Chief

Spotts, and other officers. He opined that police work was not ideal for Agresta and that if she returned to police work she should have counseling and monitoring of her behavior. Dr. Hostetter opined that Agresta had not related any work incidents that would have caused her to become dysfunctional.

The judge rejected as not credible Agresta's testimony that she sustained a work-related mental injury and accepted Dr. Hostetter's medical testimony as more credible and persuasive than Dr. Greevy's. He credited Chief Spotts's testimony that Agresta was treated the same as other officers. Based on the credited evidence, the judge found that Agresta suffers with a borderline personality disorder that is not work related and not caused by the workplace events beginning in September 2000 and that her depression at the time of her administrative leave and honorable discharge was a subjective reaction to normal working conditions. The judge thus concluded that Agresta failed meet her burden of proving that she suffered a work-related mental injury and denied her claim petition. The Board affirmed.

On appeal to this Court Agresta challenges the judge's conclusion that she failed to meet her burden of proving that her mental injury was worked related and caused by abnormal working conditions. Our review is prescribed by 2 Pa.C.S. § 704, and we must affirm unless the Board's adjudication is in violation of constitutional rights, is not in accordance with the law, or any necessary finding of fact is not supported by substantial evidence. As the fact finder, the judge decides all issues of credibility and weight of evidence, and the judge's findings are binding when supported by the requisite evidence. *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000).

To recover workers' compensation benefits for a mental or psychic injury, the claimant must prove by objective evidence that she has suffered a psychic injury and that such injury is not merely a subjective reaction to normal working conditions. *Davis; Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). Even if the claimant shows actual, and not merely perceived, employment events that have precipitated the psychic injury, the claimant must still prove that the events were abnormal in order to recover benefits. *Davis.* Psychic injury cases are highly fact sensitive, and the determination of whether working conditions are normal or abnormal must be considered in the context of the specific employment. *Id.*

In the present case, Agresta argues that she was subjected to false accusations of mental unfitness that were aired to her fellow officers, was suspended and terminated, and subject to deliberate ostracism by the police chief, who refused to let her continue her volunteer work with the forensic evidence team. She directs the Court's attention to the case of *Borough of Beaver v. Workers' Compensation Appeal Board (Rose)*, 810 A.2d 713 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied*, 573 Pa. 679, 822 A.2d 705 (2003), in which a police officer was granted benefits for a mental injury on what she characterizes as a factual background similar to her own. In *Rose*, this Court sustained an award of benefits to an officer after finding that the police chief engaged in an organized effort to solicit and make false accusations against the officer, leading to his suspension, termination, and subsequent exoneration and reinstatement by the borough's civil service commission.

What Agresta overlooks is that the judge in this case rejected her testimony as not credible with respect to the work events beginning in September 2000 and

accepted the testimony of Chief Spotts, who characterized his decision to suspend Agresta and prohibit her from working with the forensic evidence team as a normal and prudent response given the nature of police work, was at loss to explain her apparent hostility toward him personally, and divulged the nature of her disability to her fellow officers only after Agresta told him that she preferred that her fellow officers know the reason that she was put on administrative leave. Agresta was honorably discharged in May 2001 after she failed her third fitness-for-duty evaluation. The judge also credited the testimony of Dr. Hostetter that Agresta's borderline personality disorder was not caused by events at work, but rather was part of a history of psychological problems attributable to a dysfunctional family background. Based on the credited evidence, the judge could only conclude that Agresta failed to meet her burden of proving that her mental injury was work related, much less that it was caused by events at work that could be characterized as abnormal working conditions. The judge rejected Agresta's testimony and that of her medical witness, leaving no evidence to support her claim.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 4th day of June 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.