# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Crystal Yeakley, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 500 C.D. 2016 |
| | : | Submitted: August 19, 2016 |
| Workers' Compensation Appeal Board | : | |
| (BBU, Inc./Bimbo Bakeries USA; | : | |
| Indemnity Insurance Company | : | |
| of North America and ESIS | : | |
| Northeast WC Claims), | : | |
| Respondents | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
　　　　　　HONORABLE JULIA K. HEARTHWAY, Judge
　　　　　　HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**　　　　　　　　　**FILED:  January 6, 2017**

Petitioner Crystal Yeakley (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), granting the claim petition filed by Claimant and the termination petitions filed by Claimant's employer, BBU, Inc./Bimbo Bakeries USA (Employer).  For the reasons set forth herein, we affirm the Board's order.

Claimant worked for Employer as a baker's helper.  On March 11, 2014, Claimant sustained a work-related injury in the nature of a left shoulder contusion.  Employer accepted liability for Claimant's work-related injury pursuant to a medical-only Temporary Notice of Compensation Payable, which was subsequently converted to a Notice of Compensation Payable.  On

June 10, 2014, Claimant filed a claim petition, asserting that she sustained an injury to her left shoulder, neck, and back, when she slipped and fell while working for Employer on March 11, 2014, and that she is totally disabled as a result thereof. Thereafter, on August 26, 2014, Employer filed two termination petitions, asserting that Claimant had fully recovered from her work-related injury as of August 11, 2014.[1]

Claimant testified before the WCJ at the hearing held on July 15, 2014. At that time, Claimant explained that on March 11, 2014, she was wrapping and bagging bread for Employer, when she slipped on a "slippy" floor and fell onto her left side, injuring her left side, left shoulder, and neck. (Reproduced Record (R.R.) at 24a.) Claimant reported the injury to her shift supervisors, but did not seek immediate medical treatment. (*Id.* at 24a-26a.) Three days after the work-related incident, Claimant treated with the Health and Wellness Center. (*Id.* at 26a.) While treating with the Health and Wellness Center, Claimant worked for Employer in a light duty position. (*Id.* at 28a.) Sometime in middle-to-late April 2014, Claimant reported to the Health and Wellness Center that she was no longer having any problems with her left shoulder or neck. (*Id.* at 37a.) At that time, Claimant was released to return to full duty, however, after only one day of working, Claimant had a flare-up and was returned to light duty. (*Id.* at 37a-38a.) Claimant continued to perform the light duty position with Employer until Gene V. Levinstein, M.D. (Dr. Levinstein), to whom she was

---

[1] It is unclear to the Court why Employer filed two separate termination petitions, as both termination petitions seek termination of Claimant's benefits as of August 11, 2014, based upon Dr. Raklewicz's independent medical examination report and opinion that Claimant had fully recovered from her March 11, 2014 work-related injury.

2

referred by her attorney, prescribed Gabapentin, a nerve pain medication that made her light-headed and dizzy but reduced her pain and eliminated her migraines. (*Id.* at 28a-29a, 31a, 42a-43a.) Claimant stated that she immediately notified Employer that she was taking the medication as required by her collective bargaining agreement, and Employer informed her that it could no longer accommodate her with the light duty position due to her use of the medication. (*Id.* at 29a-31a.) Claimant testified that she is capable of performing the light duty position, but for her use of the medication. (*Id.* at 38a-39a.) Although she has been looking for work, Claimant has not worked since that time. (*Id.* at 32a-33a.)

Claimant testified further that following the March 11, 2014 work-related incident, she experienced pain in the rear, upper part of her left shoulder, shooting pain up into her neck, and daily migraines. (*Id.* at 27a-28a.) Claimant explained that her injury affected the upper part of her back in the area of her trapezius, not her lower back. (*Id.* at 32a-34a.) Claimant denied experiencing migraines or any problems, accidents, or incidents relative to her left shoulder or neck at any time prior to the March 11, 2014 work-related injury. (*Id.* at 26a-28a.) Claimant also explained that she continues to have problems with her shoulder and neck, but that those problems are lessened with the use of medication. (*Id.* at 39a.) Claimant stated that she does not have any problems moving or lifting her shoulder as the injury affects her trapezius area and neck, not her shoulder joint. (*Id.* at 39a-40a.) Claimant reported further that she experiences numbness and tingling in her left arm and hand and occasional pain in her elbow upon prolonged standing or sitting. (*Id.* at 40a-41a.) Claimant continues to treat with Dr. Levinstein for her work-related injury. (*Id.* at 32a-34a.)

Claimant again testified before the WCJ at the hearing held on February 17, 2015. At that time, Claimant explained that she continues to experience pain in her shoulder. (*Id.* at 60a-61a.) Claimant explained further that the video surveillance and report obtained by Employer was inaccurate because: (1) the individual depicted holding the hand of a little girl is not Claimant; (2) Claimant does not have a little girl; (3) there is no silver Toyota parked at 1028 Barnesville Drive; (4) June 18, 2014, was a Wednesday, not a Friday; and (5) Claimant did not have a scheduled appointment on June 18, 2014. (*Id.* at 63a-64a.)

Claimant presented the deposition testimony of Dr. Levinstein, who is board certified in physical medicine and rehabilitation and pain management. (*Id.* at 91a-92a.) Dr. Levinstein testified that he first treated Claimant on June 13, 2014, as a referral from Claimant's attorney. (*Id.* at 94a-95a.) On that date, Claimant reported that on March 11, 2014, she slipped and fell on the floor while working for Employer. (*Id.* at 95a.) Claimant explained to Dr. Levinstein that, as she fell, she attempted to grab a rail located on her right and struck the floor with her left arm. (*Id.*) Dr. Levinstein's physical examination of Claimant revealed decreased sensation to light touch and pinprick on a pure sensory examination of the left upper extremity. (*Id.* at 95a-96a.) Based on the history provided by Claimant, his physical examination of Claimant, and his review of prior diagnostic and EMG studies, Dr. Levinstein diagnosed Claimant with a brachial plexus lesion on the left side, brachial neuritis, and a left shoulder sprain/strain. (*Id.* at 96a.) Dr. Levinstein recommended light duty work restrictions with respect to the left arm and shoulder, which included working eight hours per day walking, standing, or sitting, with no lifting above the shoulder or

4

overuse of the left arm. (*Id.* at 96a-97a.) Dr. Levinstein also recommended that Claimant use anti-inflammatory and nerve pain medications and discussed with Claimant the potential need for injections if her symptoms did not improve. (*Id.* at 96a-97a.)

Dr. Levinstein treated Claimant again on July 18, August 18, and September 23, 2014. (*Id.* at 97a.) On those dates, Claimant reported an improvement in numbness and tingling with the use of medication and occasional light-headedness and dizziness. (*Id.* at 97a-98a.) Claimant also reported that despite being released to return to work with restrictions, she was not working because of an inability to operate machinery and the potential side effects of her medication. (*Id.* at 98a.) Dr. Levinstein's physical examinations revealed consistent findings and positive brachial plexus stretch tests. (*Id.* at 99a.) Dr. Levinstein explained that Claimant's recent EMG study was consistent with an injury to the brachial plexus, but that a prior MRI of Claimant's shoulder and a prior CAT scan of Claimant's neck were within normal limits. (*Id.* at 99a-100a.) Dr. Levinstein described Claimant's mechanism of injury as a stretch injury of the brachial plexus secondary to the fall. (*Id.* at 100a.)

Dr. Levinstein opined that his final diagnosis of Claimant's work-related injury was left shoulder sprain/strain, left brachial plexus neuritis, and a left brachial plexus lesion. (*Id.*) Dr. Levinstein further opined that Claimant had not fully recovered from her work-related injury because she continued to be symptomatic. (*Id.* at 101a-02a.) Dr. Levinstein explained that he categorically disagreed with the independent medical examination of Michael C. Raklewicz, M.D. (Dr. Raklewicz) and noted that Dr. Raklewicz did not have the EMG study during his evaluation of Claimant and that, despite a finding of hyperesthesia and

5

allodynia in the area of the brachial plexus upon physical examination, Dr. Raklewicz diagnosed Claimant with only a shoulder sprain/strain. (*Id.* at 101a.) Dr. Levinstein also opined that Claimant was capable of returning to full time, light duty work, with minimal use of her left arm and lifting only five to ten pounds. (*Id.* at 102a.) Dr. Levinstein described Claimant's prognosis as guarded to fair. (*Id.*) He explained that Claimant continues to be symptomatic with positive EMG findings, which indicates a serious injury that could be permanent. (*Id.*) Nevertheless, Dr. Levinstein believed that Claimant's condition could improve with a series of injections based on her positive improvement with medication. (*Id.*)

On cross-examination, Dr. Levinstein confirmed that it was his understanding that Claimant's problems, complaints, and pain continued from the date of injury to the date that he first treated Claimant in June 2014, but he noted that the pain associated with a brachial plexus injury can wax and wane. (*Id.* at 107a-08a.) Dr. Levinstein disagreed that his diagnosis of a brachial plexus stretch injury would be contradicted if there was a period of time that Claimant was asymptomatic and had no problems with her left shoulder and arm. (*Id.* at 108a.) He explained that Claimant's EMG clearly demonstrates a problem with the brachial plexus and that Claimant was able to perform her job without restrictions prior to the work injury. (*Id.*) While he admitted that Claimant's medical records from the Health and Wellness Center for April 1, April 15, and April 29, 2014, indicated that for a period of one month Claimant did not complain of pain in her shoulder or trapezius, Dr. Levinstein could not state whether Claimant was asymptomatic for that entire month. (*Id.* at 109a-10a.) Dr. Levinstein further confirmed that other than the brachial plexus test and the

6

pinprick test, Claimant's neurological testing was normal and that there was nothing wrong with Claimant's cervical spine. (*Id.* at 112a-13a.) Dr. Levinstein testified that Claimant was presently scheduled to undergo injections to her brachial plexus area due to her failure to improve with conservative measures. (*Id.* at 113a.)

Employer presented the deposition testimony of Dr. Raklewicz, a board certified orthopedic surgeon.[2] (*Id.* at 129a.) Dr. Raklewicz performed an independent medical examination of Claimant on August 11, 2014. (*Id.* at 130a.) On that date, Claimant provided Dr. Raklewicz with a history of her work injury and treatment, which included her mechanism of injury. (*Id.* at 131a-34a.) Claimant explained to Dr. Raklewicz that she had slipped on a wet floor and had fallen onto her left arm while working for Employer. (*Id.* at 131a, 133a.) Claimant did not inform Dr. Raklewicz that she had grabbed onto a railing with her right arm as she fell, which Dr. Raklewicz explained is an important part of the history for a diagnosis of a brachial plexus injury. (*Id.* at 133a.) Dr. Raklewicz performed a physical examination, which revealed: (1) subjective complaints of severe pain to light touch anywhere near the left trapezius muscle; (2) normal range of motion in the cervical spine; (3) normal range of motion in the shoulders bilaterally; (4) slight subjective weakness to the left biceps and triceps muscles, with reported pain in the neck upon testing, which Dr. Raklewicz found unusual because he could not correlate the reported pain physiologically; (5) normal hand intrinsic power bilaterally; (6) no obvious signs of atrophy in the left shoulder, upper arm,

---

[2] Employer also presented the testimony of David E. Cole, who was the plant manager for Employer's Hazleton location at the time that Claimant sustained her work-related injury, however, his testimony is not relevant to Claimant's arguments on appeal.

7

or forearm, which Dr. Raklewicz would have expected to see if there was a serious injury and the patient was not using the left side; (7) normal sensation in the left upper extremity; and (8) no evidence of neuropathic pain requiring the use of Gabapentin. (*Id.* at 134a-37a, 142a.) Dr. Raklewicz also reviewed Claimant's medical records and diagnostic testing, which revealed: (1) x-rays of Claimant's pelvis, left hip, left shoulder, sacroiliac joints, and elbow were normal; (2) an MRI of Claimant's left shoulder performed on March 24, 2014, showed no tears, fractures, evidence of acute injury, or tendinopathy; and (3) a stat c-spine and head CT scan performed on May 23, 2014, were normal. (*Id.* at 137a-42a.)

Dr. Raklewicz's overall impression of Claimant's work injury was a left shoulder strain and left elbow contusion. (*Id.* at 142a-43a.) Dr. Raklewicz concluded that Claimant had fully recovered from the accepted work injury of a left shoulder contusion, as well as the left shoulder strain and left elbow contusion, as of August 11, 2014, and that Claimant was capable of returning to full duty work and required no further treatment. (*Id.* at 143a-42a, 158a-60a.) Dr. Raklewicz noted further that there was evidence of symptom magnification during his physical examination of Claimant, as Claimant complained of extreme pain with very light finger touch to the trapezius, which is not physiologic. (*Id.* at 144a-45a.) Dr. Raklewicz disagreed with Dr. Levinstein's diagnosis of a brachial plexus problem and brachial neuritis, because Claimant's physical examination was normal, with no evidence to suggest a brachial plexus traction injury or neuritis. (*Id.* at 145a.) Dr. Raklewicz explained that if Claimant had sustained a brachial plexus injury, he would not have expected the range of motion in her shoulder and neck to be normal and that there should have been evidence of either weak muscles or severe sensory problems. (*Id.* at 145a-46a.)

8

Sometime after he completed his independent medical examination of Claimant, Dr. Raklewicz reviewed additional documentation/records, including a written surveillance summary, Dr. Levinstein's records from June 13, 2014, through October 24, 2014, and an EMG study performed on June 11, 2014. (*Id.* at 149a-51a.) Dr. Raklewicz explained that EMGs are "definitely subjective" and, in this case, Claimant's EMG did not correlate with his findings on physical examination. (*Id.* at 152a-53a.) Dr. Raklewicz indicated that if Claimant had sustained a brachial plexus injury on March 11, 2014, he would have expected Claimant's complaints with respect to her cervical spine and trapezius area to be continuous because a brachial plexus injury is a stretching of the nerve that causes potentially permanent damage. (*Id.* at 153a-54a.) Dr. Raklewicz indicated further that Claimant's medical records from March 11, 2014, through April 2014, did not indicate that Claimant was having any pain or problems with respect to her brachial plexus. (*Id.* at 154a-55a.) Dr. Raklewicz stated further that if Claimant injured her brachial plexus on March 11, 2014, it would be impossible for her to have no immediate brachial plexus problems and then three months later to develop such problems. (*Id.* at 155a-56a.) Based upon his review of these additional documents/records, Dr. Raklewicz opined that Claimant did not suffer from a brachial plexus lesion or brachial neuritis/radiculitis as a result of the March 11, 2014 work-related injury. (*Id.* at 156a-57a.)

On August 31, 2015, the WCJ issued a decision, granting Claimant's claim petition and Employer's termination petitions. In so doing, the WCJ summarized the witnesses' testimony and made the following credibility determinations:

> 43. Claimant's testimony is accepted as credible and persuasive to the extent that she described her work

9

injury suffered on March 11, 2014, which resulted in a closed period of disability until the date of her [independent medical examination] with Dr. Raklewicz on August 11, 2014. To this extent, Claimant's testimony was not shaken on cross-examination and was supported by the accepted testimony and opinions of Dr. Levinstein. To the extent that Claimant's testimony provides that she continued to suffer from her work injury and disability related thereto after the date of her [independent medical examination] with Dr. Raklewicz on and after August 11, 2014, it is rejected as not credible and persuasive. In this regard, it is noted that Dr. Raklewicz's testimony establishes that Claimant had fully recovered from her work injury as of his [independent medical examination]. Claimant admitted that she had reported to her treating provider in April 2014 that she no longer was having any problems relative to her shoulder and neck, although she maintained that she suffered a flare-up after returning to full duty work for only one day. As of the hearing held on July 15, 2014, Claimant admitted that she was no longer having any problems moving her shoulder, as she could lift her shoulder up and down, and that she believed her problem was in the trapezius area and her neck. As of the hearing on February 17, 2015, Claimant now stated on cross-examination that her only ongoing problem was in her shoulder.

44. The opinions of Dr. Raklewicz relative to his diagnosis of Claimant's March 11, 2014, work injury, as well as his opinion that Claimant had fully recovered from this work injury as of his evaluation on August 11, 2014, are credible, logical, internally consistent, and persuasive. This Judge was more impressed with Dr. Raklewicz's testimony and opinions than the contrary testimony and opinions of Dr. Levinstein. In this regard, this Judge was impressed with Dr. Raklewicz's explanation that Claimant's objective findings on her x-rays, CT scan, and MRI were normal. Further, Dr. Raklewicz credibly described Claimant's normal physical and neurologic examination findings, as well as Claimant's non-physiologic findings during the [independent medical examination]. Dr. Raklewicz

10

noted that if Claimant had a brachial plexus injury, he would have expected to find abnormal range of motion of the shoulder and neck, as well as evidence of weak muscles or sensory problems. Dr. Raklewicz also credibly and persuasively explained that Claimant's EMG studies are subjective and did not correlate with his physical examination. Finally, Dr. Raklewicz credibly and persuasively explained that if Claimant had a brachial plexus injury he would have expected her complaints to be constant and not come and go, although Claimant's therapy records in April 2014 indicated that she had no pain in her shoulder.

45. The testimony and opinions of Dr. Levinstein is [sic] accepted as credible and persuasive to the extent that it [sic] establishes that Claimant's work injury sustained on March 11, 2014, also caused her to suffer a left shoulder strain and caused her to require light duty restrictions until August 10, 2014. To this extent, Dr. Levinstein's opinions are corroborated by Claimant's accepted testimony. To the extent that the opinions of Dr. Levinstein conflict with those of Dr. Raklewicz, they are rejected as less credible and persuasive. This Judge notes that Dr. Levinstein relied on the subjective complaints and findings of Claimant, who advised Dr. Levinstein that she was driven to her appointments by her boyfriend. Dr. Levinstein was also apparently not aware that Claimant had no complaints of pain in her shoulder or trapezius for most of April 2014, as documented in her therapy records.

46. This Judge finds the testimony of David E. Cole is accepted, as generally credible relative to his description of the Employer's modified duty program and his description of Claimant's return to work and cessation of modified duty work after her work injury. Mr. Cole's testimony was not shaken on cross-examination.

(WCJ's Decision at 14-15.) Based on these credibility determinations, the WCJ concluded: (1) Claimant had met her burden of proving that her March 11, 2014 work-related injury caused her to sustain a left shoulder strain and a left elbow contusion and to be temporarily, totally disabled from June 3, 2014, through

11

August 10, 2014; and (2) Employer had met its burden of proving that Claimant had fully recovered from her work-related injury as of August 11, 2014. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then petitioned this Court for review.

On appeal,[3] Claimant argues that the Board committed an error of law in affirming the WCJ's decision because the WCJ capriciously disregarded substantial evidence of record that supports Claimant's continuing disability after August 11, 2014. More specifically, Claimant argues that "Dr. Levinstein's testimony offers the most substantial and credible evidence of Claimant's work injury and continuing symptoms and disability." (Claimant's Br. at 13.) Claimant argues further that Dr. Raklewicz's testimony fails to support Employer's termination petitions and is not competent because his opinions are premised, at least in part, on inaccurate surveillance video that did not depict Claimant. While Claimant frames her argument in terms of a capricious disregard of competent evidence of record, we view Claimant's argument as one of substantial evidence and will address it as such in this opinion.[4]

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Employer notes that in Claimant's appeal to the Board, Claimant argued that the WCJ's decision was not reasoned, whereas Claimant now argues before this Court that the WCJ's decision was not supported by substantial evidence. While we acknowledge Employer's position, our review of the Board's decision reveals that the Board addressed Claimant's substantial evidence argument when it concluded that the WCJ issued a reasoned decision and that such decision was supported by substantial, competent evidence.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd.* (*USX Corp.-Fairless Works*), 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd.* (*Borough of Mechanicsburg*), 850 A.2d 890, 893 (Pa. Cmwlth. 2004). It is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Comp. Appeal Bd.* (*Senco Prods., Inc.*), 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

To succeed in a termination petition, the employer bears the burden to prove that the claimant's disability has ceased and/or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Comp. Appeal Bd. (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth.), *appeal denied*, 764 A.2d 1074 (Pa. 2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his work-related injuries. *Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991). Furthermore, in order to terminate benefits, an employer must prove that all of a claimant's work-related injuries have ceased. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

Here, Claimant is essentially arguing that the WCJ's decision is not supported by substantial evidence because the testimony of Dr. Levinstein supports a finding that Claimant has not fully recovered from her work-related injury, and

the WCJ should have accepted Dr. Levinstein's testimony as more credible than Dr. Raklewicz's testimony. More specifically, Claimant argues that the testimony of Dr. Raklewicz is not competent because it is based on inaccurate surveillance evidence. Claimant's arguments, however, demonstrate a lack of understanding regarding what constitutes substantial evidence to support the WCJ's findings.

First, while Dr. Levinstein opined that Claimant has not fully recovered from her work-related injury and is only capable of returning to work in a light duty capacity, Dr. Raklewicz opined that Claimant had fully recovered from her work-related injury as of August 11, 2014. The WCJ credited Dr. Raklewicz's testimony over Dr. Levinstein's testimony on the basis that Dr. Raklewicz: (1) explained that Claimant's objective findings on her x-rays, CT scan, and MRI were normal; (2) described Claimant's normal physical, neurologic, and non-physiologic findings on examination; (3) noted that if Claimant had sustained a brachial plexus injury, he would have expected to find abnormal range of motion of the shoulder and evidence of weak muscles or sensory problems during his physical examination; (4) explained that EMG studies are subjective and Claimant's EMG was not consistent with his physical examination; and (5) explained that if Claimant had sustained a brachial plexus injury, he would have expected her complaints to be constant. (WCJ's Decision at 15.) Moreover, the WCJ found that Dr. Levinstein relied on Claimant's subjective complaints in formulating his opinions and that Dr. Levinstein was not aware that Claimant had no complaints of pain in her left shoulder or trapezius area for most of April 2014. (*Id.*) In addition, the WCJ rejected Claimant's testimony regarding her ongoing disability after August 11, 2014, as not credible and persuasive based on Dr. Raklewicz's opinion that Claimant had fully recovered from her work-related

14

injury, as well as other factors such as that Claimant reported to her treating provider in April 2014 that she was no longer having any problems with her shoulder or neck. (*Id.* at 14-15.)

Second, there is no evidence that Dr. Raklewicz's opinions were at all based on the alleged inaccurate surveillance video. Dr. Raklewicz concluded that Claimant had fully recovered from her work-related injury based on his review of Claimant's medical records and diagnostic testing and his physical examination, without any regard to the video surveillance report. In fact, Dr. Raklewicz testified that he did not even review the video surveillance report until sometime after he performed his independent medical examination of Claimant and issued his report, concluding that Claimant had fully recovered from her work-related injury.

In sum, the WCJ's finding that Claimant had fully recovered from her work-related injury as of August 11, 2014, is supported by substantial evidence because Dr. Raklewicz opined that Claimant had fully-recovered from her work-related left shoulder strain and left elbow contusion as of the date of his independent medical examination on August 11, 2014. We stress that it does not matter if there is evidence in the record that could support a finding contrary to that made by the WCJ; the only inquiry is whether there is substantial evidence of record to support the WCJ's findings. *Hoffmaster*, 721 A.2d at 1155. The WCJ, as the ultimate fact-finder, had the discretion to credit Dr. Raklewicz's testimony over Dr. Levinstein's testimony. As a result, the Board properly concluded that the WCJ's decision granting Employer's termination petitions was supported by substantial evidence.

15

For the above stated reasons, we affirm the Board's decision.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Crystal Yeakley,                           :
                        Petitioner          :
                                           :
           v.                              :      No. 500 C.D. 2016
                                           :
Workers' Compensation Appeal Board          :
(BBU, Inc./Bimbo Bakeries USA;             :
Indemnity Insurance Company                :
of North America and ESIS                  :
Northeast WC Claims),                      :
                        Respondents         :

# **O R D E R**


AND NOW, this 6th day of January, 2017, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.


_____
P. KEVIN BROBSON, Judge