# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Williams,                          :
                 Petitioner       :
                                        :
         v.                         :     No. 314 C.D. 2021
                                          :     Submitted: August 13, 2021
City of Philadelphia (Workers'            :
Compensation Appeal Board),               :
                 Respondent     :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**               **FILED: December 22, 2021**

Denise Williams (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated March 4, 2021. The Board affirmed a decision of a Workers' Compensation Judge (WCJ), denying Claimant's petition for review of utilization review determination (Petition). For the reasons that follow, we affirm.

## I. BACKGROUND

Claimant worked as a police officer for the City of Philadelphia (Employer). On September 25, 1998, Claimant was involved in a work-related motor vehicle accident, which resulted in injuries to her head, neck, shoulder, both hands, and back. In 2018, Claimant began treating with Corey J. Grink, D.C., a licensed chiropractor,

for her work-related injuries. Thereafter, on or around May 17, 2019, Employer filed a request for utilization review (UR) pursuant to Section 306(f.1)(6)(i) of the Workers' Compensation Act (Act)[1] to assess the reasonableness or necessity of any and all treatment provided to Claimant by Dr. Grink from March 28, 2019, and ongoing thereafter. (Reproduced Record (R.R.) at 20a-22a.) The UR was assigned to Uniontown Medical Rehabilitation, P.C., a utilization review organization (URO), which delegated the review to Heather Ferlitch, D.C. (Reviewer), a licensed chiropractor. (*Id*. at 20a-29a.) On July 8, 2019, the URO submitted a utilization review determination (Determination), dated June 24, 2019, concluding that the treatment provided by Dr. Grink from March 28, 2019, and ongoing through November 30, 2019, was unreasonable and unnecessary. (*Id*. at 1a, 27a-29a.) Thereafter, on July 12, 2019, Claimant filed her Petition. (*Id.* at 1a.)

The WCJ held a hearing on October 25, 2019, at which Claimant appeared and testified in support of her Petition. (*Id*. at 30a-32a.) Claimant testified that as of March 28, 2019, she was treating with Dr. Grink twice a week for up to two hours and that during those visits she received a number of treatments, including electrical stimulation, chiropractic manipulation, manual therapy, mechanical traction, exercise, and cold laser therapy, all of which relaxed her muscles and benefited her movement. (*Id*. at 35a-37a.) Claimant noted that she had surgery on her neck following the work-related injury and that she continues to suffer from pain in her neck and back that radiates to her right shoulder and causes her to experience headaches. (*Id*. at 37a, 41a.) Dr. Grink's treatment, therefore, focused on her neck and back, would change depending on the severity of her pain, and generally gave her pain relief until the time she would return to Dr. Grink. (*Id*. at 36a-37a, 39a-40a.)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6)(i).

Claimant explained that when she misses a treatment, she does not get the same range of motion in lifting her shoulders and turning her neck and that the decreased range of motion prevents her from completing her everyday activities. (*Id*. at 37a-38a.) She testified that she would like to continue her treatment with Dr. Grink because it helps her to carry on those daily activities. (*Id*. at 38a.) While Claimant did not believe that the pain would ever go away, she stated that she does not experience increased pain as a result of the treatment. (*Id*. at 39a.)

In further support of her Petition, Claimant submitted a report authored by Dr. Grink concerning the treatment he provided to Claimant. (*Id*. at 51a-52a.) Dr. Grink first noted in his report that Claimant underwent a cervical fusion in 2000, as well as arthroscopic surgical procedures for her knee and shoulder that same year. (*Id*. at 51a.) He explained that the most recent magnetic resonance imaging (MRI) of Claimant's lumbar spine performed on October 22, 2018, "indicated disc bulging at L5-S1 along with multilevel disc degeneration and multiple disc protrusions at L2-L3, L3-L4, and L4-L5." (*Id*.) A cervical MRI performed on that same date further "indicated severe loss of disc height, along with degenerative changes at C5-C6 and C6-C7 along with multiple disc bulges at C5-C6, C6-C7, and C7-T1." (*Id*.) Dr. Grink observed that Claimant began treating with him on September 25, 2018, at which time Claimant complained of pain and dysfunction related to her neck and lower back, along with pain and muscle tightness into her shoulders, right buttock, and hip, all of which severely impacted Claimant's daily functions. (*Id*.) Dr. Grink opined that the treatment he provided, which included cold laser therapy, chiropractic manipulation, therapeutic massage therapy, and continued home exercises and stretching, had a significant impact upon Claimant's ability to function on a daily basis. (*Id*. at 51a-52a.) Dr. Grink explained that, while

Claimant did have some acute exacerbations and increases in pain, the overall reduction in her pain allowed her to reduce her intake of opiate medications and better complete her daily activities. (*Id.* at 52a.)

As it concerns the Determination, Dr. Grink indicated that "sub[]standard documentation" caused the Reviewer to conclude that his treatment was ineffective, and he admitted that he could have provided better documentation. (*Id.*) Dr. Grink opined, however, that the lack of documentation should not prevent Claimant from receiving treatment that "allowed subtle improvements to [her] strength, along with being able to perform everyday activities, and [increased] blood flow to [a]ffected areas, which ultimately provided for an[] optimal outcome."[2] (*Id.*)

In opposition to Claimant's Petition, Employer offered the Determination. (R.R. at 33a.) In the Determination, Reviewer indicated that Claimant's diagnoses consisted of "cervical radiculitis status post cervical fusion at C3-C4 and C4-C5, cervical disc protrusion with radiculopathy at C5-C6, lumbar radiculitis, right hip pain, and muscle spasm." (*Id.* at 23a.) Reviewer indicated that Claimant's medical records revealed that Claimant underwent a cervical fusion and arthroscopic knee and shoulder procedures as a result of the work-related injury.[3] (*Id.*) Reviewer noted

---

[2] Claimant also submitted a personal statement in support of her Petition. (R.R. at 54a.) Much like her testimony, Claimant explained in the statement that she treats with Dr. Grink twice per week for up to two hours; that the treatment includes massage therapy, adjustment, ultrasound, low level laser treatment, and traction; and that Dr. Grink prescribes therapeutic pillows, stretch bands, a mat, and light weights for a home exercise program. (*Id.*) Claimant submitted that, while the treatment does not take away her pain and stiffness completely, it allows her to do more of her daily activities and it keeps her from stiffening up. (*Id.*) She stated that she can tell the difference in her physical abilities when she misses treatments, including having increased pain and other symptoms. (*Id.*) Claimant indicated that she would, therefore, like to continue the treatment with Dr. Grink. (*Id.*)

[3] In the process of developing the Determination, Reviewer examined a number of documents provided by Dr. Grink, including, but not limited to: an initial evaluation from

4

that Claimant began treating with Dr. Grink on September 25, 2018, for pain and stiffness in her neck, shoulders, lower back, right buttock, and hip. (*Id*.) Claimant treated with Dr. Grink 46 times between September 25, 2018, and March 26, 2019, and an additional 12 times between April 2, 2019, and May 31, 2019, the latter of which time periods was under review. (*Id*.) Claimant treated with Dr. Grink at least 2 or 3 times per week through January 11, 2019, and approximately 2 times per week since that time. (*Id*.) Treatments consisted of cold laser therapy, therapeutic massages, spinal decompression therapy, chiropractic manipulation, and electric stimulation. (*Id*.) Reviewer stated that 12 weeks of care, or 60 treatment sessions, is considered standard for acute and subacute neck and back pain, and that 36 visits in 12 weeks is recommended for chiropractic manipulation. (*Id*. at 26a.) Reviewer noted that any complicating factors would require a modification of the frequency and duration of care. (*Id*.) Reviewer reported, however:

> [A]ccording to the notes provided, [in] only 7 of the [initial] 48 [sic] visits [did] the patient note[] any improvement from treatment. During the time period under review, in only 3 out of the 12 visits was there documented improvement to the subjective complaint. At most visits the subjective note stated that "no change to the pain/stayed the same" or "an increase in pain." During the time period under review, 9 out of 12 visits were "worse pain" or "pain ha[s] stayed more or less the same." When the notes stated that there was an improvement, the subjective aspect of the note only listed "pain has improved.". . . In addition, in only 10 out of 50 total visits did [Claimant] note a positive change as a result of treatment.

September 25, 2018; office notes from 58 separate visits between September 27, 2018, and May 31, 2019; an MRI scan of Claimant's lumbar spine dated October 20, 2018; an MRI scan of Claimant's brain dated June 23, 2009; an MRI scan of the cervical spine report for 6 dates of service between April 13, 2009, and October 19, 2018; patient diagnostic study reports from 8 of the MRI scans; notes from 5 visits with other chiropractors between November 8, 2018, and March 29, 2019; records from an emergency department visit at Einstein Medical Center dated April 11, 2019; and an employee statement submitted by Claimant. (R.R. at 22a-24a.)

(R.R. at 26a-27a.) While observing that Claimant's pain was complex, Reviewer opined that there was not enough subjective information regarding her pain, such as the use of a Visual Analog Scale, to conclude there was an objective improvement as a result of the treatment. (*Id*.) Any improvement Claimant experienced, moreover, was sporadic and random as opposed to successive. (*Id*. at 27a.) Reviewer observed that Dr. Grink did not submit a written review of the treatment and that other reevaluations and assessments were not provided—*i.e.*, she indicated that the documentation provided by Dr. Grink was substandard. (*Id*. at 24a, 27a.) Thus, despite the fact that Claimant's personal statement indicated that the treatment allows her to do "more of her daily activities and keeps her from 'stiffening up,'" the available medical information strongly suggested that Claimant had "an extremely limited response to [treatment]." (*Id*. at 24a, 54a.) Reviewer, therefore, concluded that the treatment from March 28, 2019, through November 30, 2019, was unreasonable and unnecessary. (*Id*. at 27a.)

Employer also offered a report prepared by David Glaser, M.D., a board-certified orthopedic surgeon, detailing an independent medical examination (IME) he conducted of Claimant in 2019.[4] (*Id*. at 12a, 33a.) In the report, Dr. Glaser explained that he obtained a history, reviewed Claimant's medical records, and examined Claimant physically in order to make his assessment concerning the reasonableness and necessity of the chiropractic treatment provided to Claimant by Dr. Grink.[5] (*Id*. at 12a-17a.) Based upon his IME, Dr. Glaser opined within a

---

[4] Dr. Glaser had previously performed an IME of Claimant on February 12, 2016, in connection with a termination petition filed by Employer.

[5] In his report, Dr. Glaser listed the records he reviewed, as follows: his previous IME report and records dated February 12, 2016; a workers' compensation medical report from Harburg Medical Sales; the Notice of Compensation Payable issued on October 12, 1998; surgical records

6

reasonable degree of medical certainty that Claimant did not require any further treatment and that the chiropractic therapy should be discontinued. (*Id*. at 17a.) Dr. Glaser stated that Claimant's primary complaint upon examination was her spine, but that her complaints lacked specificity. (*Id*.) He noted that Claimant's medical records failed to diagnose specific surgical targets or indicate a diagnosis that would explain her symptoms. (*Id*.) While Claimant's medical records indicated diffuse numbness and weakness, Dr. Glaser explained that there was no correlation between such symptoms and Claimant's EMG studies and diagnostic testing. (*Id*.) Dr. Glaser admitted that it was reasonable to expect that Claimant would have residual effects from her cervical fusion, but this did not lead him to opine that Claimant required further treatment. (*Id*.) Rather, a program of home stretching, in Dr. Glaser's opinion, was all that Claimant required going forward. (*Id*.) Dr. Glaser further opined that, due to a lack of additional testing or records focusing on any issues with Claimant's shoulder, it supported his previous opinion that she has no residual symptomology with her shoulder. (*Id*.) Dr. Glaser, thus, concluded that Claimant

---

for bilateral carpal tunnel release from 2010; records from Dr. Michael Yoon from before and after Dr. Glaser's assessment of Claimant in 2016; records from a neurosurgeon that examined Claimant in 2016; records from Dr. Zarina Ali dated November 1, 2016; records from the Berger Henry ENT specialty group; records from Dr. Andrew Freese; a report from Dr. Arnold Berman dated January 6, 2015; records from Altura Centers for Health; reports from Dr. Curtis Slipman in the Penn Spine Center; an MRI of Claimant's cervical spine dated April 13, 2009; an MRI of Claimant's right shoulder dated April 14, 2009; an MRI of Claimant's brain dated June 23, 2009; an MRI of Claimant's cervical spine (weight bearing study) dated July 11, 2009; an MRI of Claimant's cervical spine dated June 10, 2010; an MRI of Claimant's left shoulder dated June 10, 2010; an MRI of Claimant's right shoulder dated June 10, 2010; an electromyography (EMG) dated September 7, 2010; an MRI of Claimant's brain dated August 9, 2011; an MRI of Claimant's cervical spine dated August 9, 2011; an MRI of Claimant's cervical spine dated February 1, 2016; an MRI of Claimant's cervical spine dated October 26, 2016; an MRI of Claimant's lumbar spine dated January 10, 2017; miscellaneous chiropractic records; and physical therapy records. (R.R. at 15a-16a.)

7

required no further treatment, but he did recommend Claimant for light-duty restrictions as a result of ongoing issues with her neck. (*Id.* at 17a-19a.)

On April 10, 2020, the WCJ issued a decision, denying Claimant's Petition. (R.R. at 55a, 61a.) In so doing, the WCJ summarized the relevant evidence and made the following credibility determinations:

> 7. The undersigned has carefully and thoroughly reviewed the testimony of Claimant and finds her testimony not credible regarding the efficacy of the treatment rendered by Dr. Grink, as that testimony and the report of Dr. Grink both lack any specificity as to exactly what that treatment does for her and what activities are enabled by that treatment.
>
> 8. The undersigned has carefully and thoroughly reviewed the opinions of [Reviewer], Dr. Glaser, and Dr. Grink, and finds the opinions of [Reviewer] and Dr. Glaser more competent and credible than those of Dr. Grink. Dr. Glaser has had the opportunity to examine Claimant on two occasions to support his opinions. [Reviewer's] opinions are in line with those of Dr. Glaser. While Dr. Grink states in his report that his documentation could have been more detailed, his report provides no such additional detail to establish that his treatment was reasonable and necessary.

(*Id.* at 59a-60a.) Based on these credibility determinations, the WCJ concluded that Employer met its burden of proving that the treatment provided to Claimant by Dr. Grink as of March 28, 2019, and ongoing thereafter, was not reasonable or necessary. (*Id.*) Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant now petitions this Court for review.

## II. DISCUSSION

On appeal,[6] Claimant essentially contends that substantial evidence of record does not exist to support the WCJ's finding that the treatment provided by Dr. Grink

---

[6] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional

8

is unreasonable and unnecessary as of March 28, 2019, and ongoing thereafter. More specifically, Claimant contends that Reviewer specifically limited her finding as to the reasonableness and necessity of the treatment to the time period of March 28, 2019, through November 30, 2019. Claimant also alleges that Dr. Glaser's opinion conflicts with Reviewer's opinion because Dr. Glaser recommended a total discontinuation of treatment, whereas, again, Reviewer concluded that treatment should be suspended only through November 30, 2019. Based on this conflict, Claimant contends that the record does not support the WCJ extending Reviewer's finding relative to the reasonableness and necessity of Dr. Grink's treatment beyond November 30, 2019. Lastly, Claimant contends that Dr. Glaser's opinion is unsubstantiated because Dr. Glaser did not review Dr. Grink's treatment notes up to or after March 28, 2019.[7]

Employer responds that the WCJ's finding that the treatment provided to Claimant by Dr. Grink is not reasonable or necessary from March 28, 2019, and ongoing thereafter is supported by substantial evidence. While Employer concedes that Dr. Glaser did not review Dr. Grink's treatment notes, Employer observes that Dr. Glaser reviewed a significant amount of other medical records and diagnostic studies at the time of his 2016 and 2019 IMEs, which Employer argues is sufficient to support his opinion. Employer further contends that, contrary to Claimant's

---

rights were violated." *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

[7] To the extent that Claimant also argues that the WCJ erred by mischaracterizing the description of Claimant's work-related injuries, her argument has no merit. As the Board noted, the WCJ did not amend the description of Claimant's work-related injuries, but rather, simply recited what the documents of record indicated. The nature of Claimant's work-related injuries is not at issue in this matter.

contentions, the opinions of Reviewer and Dr. Glaser were consistent with one another and, thus, constitute substantial evidence to support the WCJ's findings.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id*. If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). We may only reverse a WCJ's findings if they are unsupported by substantial evidence or are arbitrary or capricious. *B & T Trucking v. Workers' Comp. Appeal Bd. (Paull)*, 815 A.2d 1167, 1170 (Pa. Cmwlth. 2003). In making this determination, we may not "reweigh the evidence or the credibility of the witness[es], but [must] simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole." *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). It is irrelevant whether there is evidence in the record that could support a different conclusion; "rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding[s]." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

The UR process in workers' compensation proceedings is set forth in Section 306(f.1)(6) of the Act, which provides, in pertinent part:

> (6) [D]isputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

10

(i) The reasonableness or necessity of all treatment provided by a health care provider under th[e A]ct[8] may be subject to prospective, concurrent or retrospective [UR] at the request of an employe[e], employer or insurer. The [Pennsylvania Department of Labor and Industry (Department)] shall authorize [UROs] to perform [UR] under th[e A]ct. [UR] of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the [D]epartment may not engage in such [UR].

An employer has the burden throughout the UR process to prove that the treatment provided to the claimant is not reasonable or necessary. *Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1149 (Pa. Cmwlth.), *appeal denied*, 94 A.3d 1011 (Pa. 2014). The UR determination becomes part of the record before the WCJ. 77 P.S. § 531(6)(iv). The WCJ shall consider the UR determination as evidence, but the WCJ is not bound by its conclusions. *Id.*

After careful review, we find no merit to Claimant's contention that the record lacks evidence to support the WCJ's finding that the treatment provided to Claimant by Dr. Grink is unreasonable and unnecessary as of March 28, 2019, and ongoing thereafter. While we recognize that Reviewer opined that Dr. Grink's treatment of Claimant was not reasonable or necessary only through November 30, 2019, Dr. Glaser opined that Claimant did not require any further treatment for her work-related injury, thus, supporting a finding that Dr. Grink's treatment as of March 28, 2019, and ongoing thereafter is not reasonable or necessary to treat Claimant's work-related injury. Indeed, the WCJ credited both Dr. Glaser's and Reviewer's opinions that the treatment was unreasonable and unnecessary, and she concluded, based on those opinions, that the treatment provided to Claimant by Dr. Grink was unreasonable and unnecessary as of March 28, 2019, and ongoing

---

[8] 77 P.S. §§ 1-1041.4, 2501-2710.

11

thereafter. In accepting these opinions, the WCJ rejected both Claimant's testimony and Dr. Grink's opinion, finding that neither individual was credible concerning the nature of Claimant's improvements because they could not adequately explain *how* the treatment benefited her. As noted above, it is not this Court's role to reweigh evidence or second-guess credibility determinations. *Elk Mountain*, 114 A.3d at 32 n.5. It is also irrelevant whether there is evidence in the record that could support a different conclusion; rather, our concern is whether there is substantial evidence to support the findings that were made. *Hoffmaster*, 721 A.2d at 1155. Clearly, the opinions of Reviewer and Dr. Glaser provide substantial support for the WCJ's finding that Claimant's treatment was unreasonable and unnecessary as of March 28, 2019, and ongoing thereafter. *See Agresta*, 850 A.2d at 893.

We are also not persuaded by Claimant's argument that Dr. Glaser's opinion is somehow unsubstantiated because he failed to review Dr. Grink's treatment notes. First, Dr. Glaser performed an IME of Claimant and thereafter concluded that Claimant did not require any further treatment for her work-related injury. In reaching that conclusion, it may not have been necessary for Dr. Glaser to review such notes. Second, Reviewer found that the limited treatment notes from Dr. Grink indicated that Claimant had "an extremely limited response to [treatment]," suggesting that the notes, nevertheless, would not have swayed Dr. Glaser's opinion even if he had reviewed them. (R.R. at 27a.) Finally, Dr. Glaser was clearly still able to render a competent medical opinion based on the significant amount of information he reviewed and the fact that he physically examined Claimant on two separate occasions. For all these reasons, we cannot conclude that the record lacks substantial evidence to support the WCJ's finding that Dr. Grink's treatment of

12

Claimant was not reasonable or necessary as of March 28, 2019, and ongoing thereafter.

### III. CONCLUSION

For the reasons set forth above, the Board's order is affirmed.

_____
P. KEVIN BROBSON, President Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Williams,                      :

                 Petitioner     :

                       :

        v.                :   No. 314 C.D. 2021

                       :

City of Philadelphia (Workers'    :

Compensation Appeal Board),     :

              Respondent  :

# **O R D E R**

AND NOW, this 22nd day of December, 2021, the order of the Workers' Compensation Appeal Board dated March 4, 2021, is AFFIRMED.

_____

P. KEVIN BROBSON, President Judge
