IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra Elliott,                                    :
                    Petitioner                    :
                                                  :
          v.                                      : No. 1067 C.D. 2016
                                                  : Submitted:  December 23, 2016
Workers' Compensation Appeal                      :
Board (SEPTA),                                    :
                    Respondent                    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                        FILED: January 19, 2017


          Debra Elliott (Claimant) petitions for review from a decision of the
Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) grant of Southeastern Pennsylvania Transportation
Authority's (Employer) Petition to Terminate Compensation Benefits as well as
denying Claimant's Petition to Review Compensation Benefits.[1]  We affirm.

---

[1] The Board also affirmed the WCJ's denial of Claimant's Penalty Petition for the payment of certain alleged medical supplies.  However, Claimant does not challenge that portion of the Board's order on appeal.

## I.

On February 23, 2008, Claimant, a bus driver, sustained a work-related injury. Employer issued a Notice of Compensation Payable (NCP) under the Workers' Compensation Act (Act)[2] recognizing that Claimant suffered an injury to her "right sided chest wall" later amended by stipulation to include "pain disorder with components of depression and anxiety." (Reproduced Record (R.R.) at A007.)

In 2010, Claimant filed a review petition (First Review Petition) seeking to amend the description of her work-related injury to include "right brachial plexopathy, right sided complex regional pain syndrome/RSD [(CRPS)], right rotator cuff tear, tendonitis and impingement syndrome."[3]

In that proceeding, Claimant's medical expert, Dr. David Tabby, who is board certified in neurology, testified that Claimant exhibited symptoms in her right arm and upper chest region indicating CRPS, but noting that CRPS "is a condition that will progress over time and spread to other parts of the body. . . ." (R.R. at A019.) The WCJ summarized the diagnosis of Dr. Roy Lefkoe, who is board certified in orthopedic surgery, who testified on Claimant's behalf that she had "a rotator cuff tear of the right shoulder with impingement, right shoulder sprain and strain, aggravation of degenerative changes at the acromioclavicular joint and humeral head of the right shoulder, right brachial plexopathy, and CRPS of the right upper extremity." (R.R. at A017.)

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

[3] R.R. at A011.

While Employer offered the depositions of independent medical examination (IME) physicians, those testimonies were found incredible in so far as they determined that Claimant did not have CRPS. Most significantly, none of the testimony proffered by either party related to Claimant's left side.

In January 2011, based on the accepted testimony in the First Review Petition proceeding, the WCJ expanded Claimant's injury to include "right sided complex regional pain syndrome (spreading), right brachial plexopathy, right rotator cuff tear with impingement and right shoulder strain/sprain." (R.R. at A029.)

## II.

In May 2013, Claimant filed another review petition (Second Review Petition), the one that is now before us, seeking to further expand the description of her injuries in the NCP to include "spread of complex regional pain syndrome spreading to the face, neck, right lower extremity **and left upper and lower extremities**; specific loss of the right upper extremity and all other diagnoses/injuries as established by [Claimant's] medical evidence." (R.R. at A031) (emphasis added). Employer denied the allegations in Claimant's petition but then filed a Termination Petition alleging that Claimant fully recovered as of April 26, 2013, based on IMEs conducted by Dr. Donald Leatherwood, who is board certified in orthopedic surgery, and Dr. Paul Shipkin, who is board certified in neurology. The petitions were consolidated for hearing.[4]

---

[4] While the petitions were awaiting disposition, the parties entered into a Compromise and Release Agreement (C & R Agreement) and Claimant received a lump-sum settlement for all indemnity and specific loss benefits. It was agreed, however, that the C & R Agreement would not impact medical benefits liability or the pending petitions.

Initially, Claimant asserted that Employer should be collaterally estopped from challenging her Second Review Petition because the parties already fully litigated the issue of whether Claimant's injury includes the "spreading" of CRPS and the Second Review Petition only sought to specify the areas affected by her accepted injury. The WCJ determined, however, that because the First Review Petition only pertained to Claimant's right upper extremity and chest areas, it would be improper "to expand the [CRPS] to include the areas alleged by Claimant's [Second Review Petition], particularly the left side and left lower extremities." (R.R. at A044.)

**A.**

Before the WCJ, Claimant testified that she sustained a work-related injury to her right shoulder and chest region on February 23, 2008, while turning Employer's bus steering wheel. She went on to testify that she worked modified duty for one year and then underwent right rotator cuff surgery. Claimant then attempted to return to work but was unable to do so. Claimant testified that as a result of her work-related injuries, she experiences shooting pains that go down her right arm and hand. While these symptoms remain most severe in her right arm and shoulder areas, she testified that they have spread to her upper and lower left-side extremities and her face. She also testified that she cannot use steps or lift anything heavier than five pounds because of pain and potential flare-ups.

In support of her Second Review Petition, Dr. David Tabby, the same physician from her First Review Petition, testified by deposition that he presently treats Claimant for CRPS and brachial plexopathy, as well as her chest and right

4

shoulder injuries. He was not treating or offering testimony for Claimant's right-sided chest wall strain/contusion, right shoulder sprain/strain, or right shoulder rotator cuff tear with impingement. Dr. Tabby testified that Claimant's CRPS has spread to every part of her body except for her abdomen and lower back.

Dr. Tabby also reviewed video surveillance of Claimant carrying a bag and waving to a neighbor with seeming ease, which did not change his medical opinion. He noted that CRPS is a "consistently inconsistent" condition. (R.R. at A192.) He admitted, however, that his diagnosis relies heavily on Claimant's subjective complaints, and that he has not personally observed symptoms of CRPS on other parts of Claimant's body that would confirm spreading.

**B.**

In opposition to Claimant's petition and in support of Employer's petition, Dr. Paul Shipkin, a board certified neurologist, testified that he examined Claimant on September 22, 2011, and then again on March 7, 2013. Dr. Shipkin testified that he acknowledged and understood Claimant's accepted work injuries.

Dr. Shipkin testified that during the first examination, he found no evidence or symptoms indicating CRPS and that Claimant's right-sided chest wall strain had resolved. He testified that during the second examination, Claimant presented no signs or symptoms of CRPS. Based on his examinations and after reviewing Claimant's medical records and history, he concluded that she was fully recovered from all accepted injuries. Dr. Shipkin specifically indicated, question by question, that Claimant was fully recovered from the right-sided chest wall strain,

right-sided CRPS (spreading), and right brachial plexopathy.  Dr. Shipkin also noted that he examined Claimant's right upper extremity and, though admitting he is not an orthopedic surgeon, was able to conclude that Claimant had fully recovered from her right rotator cuff tear with impingement and right shoulder sprain/strain.  Dr. Shipkin opined that he reviewed video surveillance of Claimant carrying a bag in her right hand and using her right hand and right upper extremity repeatedly in a variety of settings, indicating that she was neurologically normal.

Employer also presented the deposition of Dr. Donald Leatherwood II, a board certified orthopedic surgeon.  He testified that he examined Claimant on January 3, 2012, and April 26, 2013, and he was aware of her accepted injuries.

Dr. Leatherwood testified that during the 2012 examination, Claimant complained of right shoulder and right upper extremity pain as well as burning, numbness and weakness, and that she stated that she was unable to go grocery shopping or perform housework or yard work.  However, Dr. Leatherwood found that Claimant did not demonstrate any of the hallmark symptoms for CRPS and noted that there was no atrophy of the right upper extremity, indicating that she was using her right upper extremity for normal activities.  Based upon his physical examination and a review of Claimant's medical history and records, he concluded that Claimant was fully recovered from a chest wall sprain/strain.  Although he did not accept that Claimant's CRPS or shoulder problems were work-related injuries, he testified that "[i]t was my opinion that to what extent [Claimant] had sustained an injury to her right upper extremity as of . . . January 3rd, 2012, she was fully recovered from that injury."  (R.R. at A297.)  His 2013 examination of Claimant also failed to produce

6

any signs of CRPS and he reiterated that his opinion remained unchanged after the 2013 examination, and "that to what extent [Claimant] suffered work injuries . . . she was completely recovered from them when I saw her again on April 26th, 2013." (R.R. at A304.)

Dr. Leatherwood also reviewed surveillance of Claimant using her right upper extremity in what appeared to be a fully natural and pain-free manner, lifting her arm well-above her head to clean her car and using her right arm to carry trash, clean her house and give another person a "high-five." He concluded that Claimant simply could not have performed these actions if she had CRPS and her subjective complaints were accurate.

## C.

The WCJ denied Claimant's Second Review Petition and granted Employer's Termination Petition with the exception of the accepted pain disorder with components of depression and anxiety. The WCJ found that Claimant failed to establish that her CRPS spread to the specified portions of her body and Employer met its burden that Claimant was fully recovered from all of her work injuries.[5] The WCJ found Claimant's testimony incredible regarding her ongoing complaints and assertion that her symptoms of CRPS had spread, especially in light of the offered surveillance footage. The WCJ found Employer's medical witnesses, Drs. Shipkin and Leatherwood, more credible than Claimant's medical witness, Dr. Tabby, because Dr. Tabby admitted that his conclusions relied on subjective complaints by

_____

[5] The WCJ also determined that Employer presented a reasonable contest at all times.

7

Claimant and that he had not personally observed any spreading symptoms of CRPS. The WCJ also found Drs. Shipkin and Leatherwood more credible than Dr. Tabby because each independently concluded that Claimant displayed non-physiological responses to touch when being examined and because neither doctor found any evidence of ongoing CRPS during their medical examinations of Claimant. Claimant appealed to the Board, which affirmed. Claimant then filed this petition for review.[6]

## III.

## A.

On appeal, Claimant contends that the Board erred by refusing to automatically grant her Second Review Petition. She argues that because the First Review Petition accepted "spreading" of CRPS pursuant to the doctrine of collateral estoppel, the "spread" should be accepted to the left part of her body. However, we have explained that for the doctrine of collateral estoppel to apply, one must demonstrate that:

> (1) the issue decided in the prior case is **identical** to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.

---

[6] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

*Pucci v. Workers' Compensation Appeal Board (Woodville State Hospital)*, 707 A.2d 646, 648 (Pa. Cmwlth. 1998). Here, as the WCJ and Board correctly reasoned, the issues involved in these two petitions are not identical because Claimant's First Review Petition only pertained to her right upper extremity and chest areas, whereas her Second Review Petition sought to expand this accepted injury to specific portions of her body, particularly the left side and left lower extremities, which was never previously litigated.

## B.

Claimant next contends that Employer did not establish that she fully recovered from her accepted right shoulder injuries described as a rotator cuff tear or impingement syndrome because Dr. Leatherwood failed to acknowledge the shoulder injuries were work-related and Dr. Shipkin's testimony relating to Claimant's right shoulder fell outside his specialty.

Generally, "a medical expert's opinion will not support a termination if that medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries" because an employer may not litigate the nature of the accepted work injury in a termination petition. *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010). However, even when a physician does not believe that the injury occurred or that it was work-related, his testimony will support the finding of a full recovery if he nonetheless opines that if the injury was, in fact, sustained, the claimant has fully recovered from it. *See To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003).

9

As to Dr. Leatherwood's testimony, while he failed to specifically accept Claimant's right shoulder injuries, he went on to testify that "to what extent [Claimant] suffered work injuries on February 23rd, 2008, she was completely recovered from them. . . ." (R.R. at A304.) Dr. Leatherwood also concluded that Claimant fully recovered from any injuries she sustained from her work-related injury. Given that he stated that he was aware that there was a previous right shoulder injury that had been accepted and that Claimant had fully recovered, Dr. Leatherwood's testimony was competent and constituted substantial evidence to support the WCJ's opinion that Claimant had fully recovered from her work-related injuries.

As to Claimant's contention that Dr. Shipkin's testimony was incompetent because his opinion that Claimant had fully recovered from all of her accepted injuries included her right shoulder injuries, which were outside of his specialty, we have explained that "[g]enerally, a physician is competent to testify in specialized areas of medicine even though that physician is not a specialist in, or certified in, those fields." *Marriott Corp. v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 629 (Pa. Cmwlth. 2003). Whether a physician is a specialist or not goes to the weight of the testimony, not its competence. *See Workmen's Compensation Appeal Board v. Branch Motor Express*, 334 A.2d 847, 848 (Pa. Cmwlth. 1975). Because the WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight,[7] we will not disturb

---

[7] *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

10

her findings that both Drs. Shipkin and Leatherwood credibly testified that Claimant's accepted work injuries are fully recovered.[8]

Accordingly, the Board's order is affirmed.[9]

_____
DAN PELLEGRINI, Senior Judge

---

[8] Claimant also contends that the WCJ misrepresented the testimony offered by Dr. Tabby and, as such, the WCJ's findings of fact and conclusions of law are not supported by substantial evidence. However, the WCJ had more than substantial evidence to find Dr. Tabby's testimony incredible because he admitted that his diagnosis relied on Claimant's subjective complaints, and Claimant's testimony was found incredible. Given Dr. Tabby's reliance on Claimant's subjective complaints and in light of video surveillance of Claimant and the independent findings by Employer's IME physicians cutting against Dr. Tabby's testimony, we will not disturb the WCJ's findings.

[9] Claimant also contends that Employer's contest was not reasonable and requests an award of counsel fees and costs. Because Claimant is not a prevailing party, we do not reach that issue.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra Elliott,                               :
                    Petitioner              :
                                             :
          v.                                 : No. 1067 C.D. 2016
                                             :
Workers' Compensation Appeal                 :
Board (SEPTA),                               :
                    Respondent              :


**O R D E R**


AND NOW, this 19<u>th</u> day of <u>January</u>, 2017, it is hereby ordered that the order of the Workers' Compensation Appeal Board dated June 8, 2016, is affirmed.


_____
DAN PELLEGRINI, Senior Judge